IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Monster Daddy LLC, | ) | |
| | ) | C.A. No. 6:10-1170-HMH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| Monster Cable Products, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

Monster Daddy LLC ("Monster Daddy") and Monster Cable Products, Inc. ("Monster Cable") have been embroiled in trademark infringement litigation since January 2006. On October 25, 2007, the parties executed a confidential settlement agreement that temporarily resolved their claims. On May 7, 2010, however, Monster Daddy commenced this civil action, alleging that Monster Cable materially breached the parties' settlement agreement. Monster Cable subsequently asserted numerous counterclaims and affirmative defenses against Monster Daddy. This matter is currently before the court on Monster Daddy's dual motions to dismiss, or in the alternative strike, Monster Cable's counterclaims and affirmative defenses pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure and on Monster Daddy's motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. For the reasons explained below, Monster Daddy's motions to dismiss are granted in part and denied in part, and its motion for sanctions is denied.

1

# I. FACTUAL AND PROCEDURAL HISTORY

On August 17, 2005, Monster Daddy filed a trademark application with the United States Patent and Trademark Office ("USPTO") stating its intent to use the mark "MONSTER" for goods in Class 3, which covers cleaning products (hereinafter the "older MONSTER mark"). (Am. Answer 13.) The USPTO issued Monster Daddy a Notice of Allowance for the older MONSTER mark on September 12, 2006. (Id.) On July 2, 2007, Monster Daddy filed a statement of use with the USPTO and indicated that it had used the older MONSTER mark in commerce for goods in Class 3 since November 4, 2005. (Id. at 13-14.) The USPTO issued a notice that it accepted the statement of use for the older MONSTER mark on November 7, 2007, and on December 11, 2007, it issued Monster Daddy a certificate of registration. (Id. at 14.)

On September 7, 2007, Monster Cable filed a trademark application to register the MONSTER mark for goods in Class 3. (Id.) Monster Cable's trademark application, however, was predicated upon Monster Cable's use of the MONSTER mark in commerce as early as November 8, 2000. (Am. Answer 15.) Acting pursuant to the parties' October 25, 2007 settlement agreement, Monster Daddy filed a trademark application for the MONSTER mark (hereinafter "new Monster mark") on October 31, 2007, and it stated its intent to use the mark for goods in Classes 1, 3, 4, 5, and 16. (Id. at 14.) Monster Daddy filed its statement of use for the new MONSTER mark on November 9, 2009. (Id.) In its statement of use, Monster Daddy signaled that it had used the MONSTER mark for goods in Class 1 and Class 3 as early as January 1, 1993 (use in commerce as early as November 1, 1996), for goods in Class 4 in commerce as early as January 24, 2007, for goods in Class 5 in commerce as early as September 30, 2004, and for goods in Class 16 in commerce as early as October 16, 2009

(collectively hereinafter "Claimed Priority Dates"). (Id.) On February 2, 2010, the USPTO issued Monster Daddy a certificate of registration for the new MONSTER mark. (Id.)

On May 7, 2010, Monster Daddy commenced this action against Monster Cable seeking specific performance of the parties' settlement agreement and declaratory relief. Monster Cable filed its answer on August 6, 2010, raising numerous counterclaims and affirmative defenses. Monster Daddy brought the instant motion on August 26, 2010, challenging the sufficiency of Monster Cable's counterclaims and affirmative defenses. On September 13, 2010, Monster Cable amended its answer and filed a response contending that its amended answer rendered Monster Daddy's motion to dismiss moot. Monster Daddy subsequently filed its reply on September 23, 2010, maintaining that Monster Cable's pleadings remained deficient. On October 6, 2010, Monster Cable filed a sur reply countering Monster Cable's motion to dismiss on the merits. Because Monster Cable failed to address Monster Daddy's contention that Monster Cable's affirmative defenses were insufficiently pleaded, on October 18, 2010, the court ordered Monster Cable to file supplemental briefing. On October 25, 2010, Monster Daddy filed an additional motion to dismiss renewing its claims that Monster Cable's counterclaims and affirmative defenses were deficient. Monster Cable filed its supplemental memorandum on October 28, 2010, and filed a response to Monster Daddy's second motion to dismiss on November 12, 2010. On November 22, 2010, Monster Daddy filed its reply. This matter is now ripe for review.

## II. DISCUSSION OF THE LAW

When presented with a Rule 12(b)(6) motion to dismiss, the court must restrict its inquiry to the sufficiency of the complaint rather than "resolve contests surrounding the facts,

the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). Under this plausibility standard, the court should "assume th[e] veracity" of well-pled factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." Id. at 1950. While a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although the court must consider all well-pled factual allegations in a complaint as true, the court need not "accept as true a legal conclusion couched as a factual allegation." Id.

### A. Mootness

As a threshold matter, Monster Cable claims that Monster Daddy's original motion to dismiss is moot. Monster Cable cites a case from the United States Court of Appeals for the Fifth Circuit for the proposition that an amended pleading supercedes the original pleading. Relying on this principle, Monster Cable posits that the nullification of its original answer should moot Monster Daddy's 12(b)(6) motion attacking its original answer. (Def. Resp. 1; Sur Reply 1-2; Mem. Opp'n Mot. Strike Affirmative Defenses 3.)

Monster Cable correctly asserts that its amended pleading superceded its original pleading. Young v. City of Mount Ranier, 238 F.3d 567, 572 (4th Cir. 2001). Monster Daddy, however, maintains that the counterclaims and affirmative answers, as amended, are still

deficient. (Pl. Reply 1-2; Mot. Dismiss Am. Countercl. & Affirmative Defenses, generally.) To accept Monster Cable's contention that Monster Daddy's motion to dismiss is moot in the face of Monster Daddy's repeated assertion that Monster Cable's amended answer remains deficient would defy logic and would "exalt form over substance." 6 Charles Alan Wright et al., Federal Practice and Procedure § 1476 (3d ed. 2010) (noting that a party "should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending"). Based on the foregoing, Monster Daddy's motion to dismiss is not moot.

### B. Counterclaims

#### 1. Fraud Claim

Monster Cable's first counterclaim is for fraud. A party may petition to cancel a registration for a federal trademark "[a]t any time if the registered trademark['s] . . . registration was obtained fraudulently . . . ." 15 U.S.C. § 1064(3). Monster Cable alleges that "Monster Daddy obtained Registration No. 3,745,100 (the new Monster mark . . . ) by knowingly making false material statements to the USPTO with the intent to deceive." (Am. Answer 18.) To successfully cancel a trademark on the basis that its registration was fraudulently obtained, a party must plead and prove that one "knowingly made false, material representations of fact and intended to deceive the Patent and Trademark Office." Resorts of Pinehurst, Inc. v. Pinehurst Nat. Corp., 148 F.3d 417, 420 (4th Cir. 1998) (internal quotation marks omitted). Rule 9(b) of the Federal Rules of Civil Procedure requires parties alleging fraud to "state with particularity the circumstances constituting fraud"; however, "[m]alice, intent, knowledge, and other

conditions of a person's mind may be alleged generally."[1]  Monster Cable contends that Monster Daddy falsified the date of first use and the goods for which it had used the MONSTER mark in its statement of use filed with the USPTO.  (Am. Answer 18.)

The Trademark Board has consistently held that an erroneous statement of the date of first use is immaterial, and therefore not fraudulent, as long as the applicant's actual first use precedes the application filing date.  6 McCarthy on Trademarks & Unfair Competition § 31:74 (4th ed. 2010).  Monster Cable argues that Monster Daddy's alleged false date of first use is material because it gave Monster Daddy priority for the mark over other parties and thereby resulted in allowance of a registration that otherwise would not have been allowed.  (Def. Opp'n Pl. Mot. Dismiss Am. Countercl. & Affirmative Defenses 7-10.)  Courts, however, have rejected this proposition, noting that "[a]n erroneous date of first use could not possibly result in the allowance of a registration which would otherwise not be allowed, as long as there was technical trademark use prior to the filing of the application."  Georgia-Southern Oil, Inc. v. Richardson, 16 U.S.P.Q. 2d 1723, 1727 (Trademark Tr. & App. Bd. 1990); see also Angel Flight of Ga. v. Angel Flight Am., Inc., 522 F.3d 1200, 1210 (11th Cir. 2008); Pony Exp. Courier Corp. of Am. v. Pony Exp. Delivery Serv., 872 F.2d 317, 319 (9th Cir. 1989); Lewis v. Microsoft Corp., 410 F. Supp. 2d 432, 438 (E.D.N.C. 2006).  Monster Cable has not presented the court with any legal authority supporting its contention that a false date of first use could ever be material when the applicant's actual use occurred prior to the application filing date.  Based on the foregoing, the court concludes that for Monster Cable's allegations of fraud to have facial plausibility,

---

[1] Monster Cable's fraud claim must satisfy not only the heightened pleading standard imposed by Rule 9(b), but also the plausibility standard enunciated in Twombly and Iqbal. Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010).

Monster Cable must plead facts that give rise to a reasonable inference that Monster Daddy failed to use the MONSTER mark when it filed its statement of use.

Second, Monster Cable contends that Monster Daddy fraudulently claimed in its statement of use that it used the MONSTER mark in Classes 1, 3, 4, 5, and 16. (Am. Answer 17-18.) Monster Cable alleges that Monster Daddy's statements relating to its use of the MONSTER mark "were false and Monster Daddy, LLC knew they were false" and that they "would deceive the USPTO." (Id.) Further, Monster Cable submits that the "false statements were material" because the USPTO relied upon them in issuing Monster Daddy the certificate of registration for the new MONSTER mark. (Id. at 18.) With respect to damages, Monster Cable pleads that it "believes that it has and/or will suffer injury in fact and damages as a consequence of Monster Daddy's fraud." (Id.)

Like the complaint before the Supreme Court in Iqbal, Monster Cable's factual allegations with respect to Monster Daddy's use of the MONSTER mark consist of "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a fraud claim. Iqbal, 129 S. Ct. at 1951; see also id. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). These conclusory allegations fail to provide sufficient factual support to raise a credible inference that Monster Daddy's statements with respect to its use of the MONSTER mark constituted fraud. The plausibility standard of pleading requires Monster Cable to produce factual allegations that show "more than a sheer possibility that a defendant has acted unlawfully." Id. at 1949. However, Monster Cable's bald allegations fail to show that its fraud claim is facially plausible. Based on

the foregoing, the court grants Monster Daddy's motion to dismiss Monster Cable's fraud claim. However, the court grants Monster Daddy leave to amend the deficiencies outlined above.

## 2. Breach of Contract Claims

In counts two and three, Monster Cable alleges breach of contract claims against Monster Daddy. Monster Cable argues that Monster Daddy breached its contractual obligations in paragraph three of the parties' settlement agreement, which states:

> Monster Daddy will file a single trademark application for MONSTER (single word) . . . which Monster will not oppose, seek to cancel or otherwise challenge. At such time as the referenced application for MONSTER is allowed in Class 003 or abandoned as to Class 003, Monster Daddy will expressly abandon the pending application for MONSTER . . . . Monster Daddy agrees that any use of MONSTER (single word) will be limited to a discrete placement and always in connection with a more prominent usage of [MONSTER ENGINEERING].

(Settlement Agreement ¶ 3.)[2] Specifically, Monster Cable contends that Monster Daddy has failed to use the MONSTER mark in a manner that constitutes a "discrete placement" and that it has used the MONSTER mark without the more prominent usage of the mark MONSTER ENGINEERING. (Am. Answer 18-19.) Further, Monster Cable alleges that Monster Daddy has failed to abandon the older MONSTER mark filing as required by the settlement agreement. (Id.) Monster Daddy maintains that the claim should be dismissed because the confidential settlement agreement forecloses the opportunity for Monster Daddy to challenge the new MONSTER mark. (Pl. Reply 2.) Monster Cable, however, contends that Monster Daddy breached the settlement agreement first and cites South Carolina case law for the proposition

---

[2] The court is authorized to consider the settlement agreement because it is "integral to and explicitly relied on in the complaint" and because neither of the parties "challenge its authenticity." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004).

that the first party to breach a contract is barred from complaining of a subsequent breach by the opposing party. (Def. Sur Reply 5-7.)

Monster Cable's breach of contract claims contain sufficient facts to plead a cognizable claim for relief. Further, Monster Cable asserts contractual defenses that require the development of factual issues such as assessing which party breached the settlement agreement first. Resolution of these issues would require the court to shift its inquiry beyond the exclusive focus on the sufficiency of Monster Cable's pleading at the motion to dismiss stage. The court declines to do so. Based on the foregoing, the court denies Monster Daddy's motion to dismiss Monster Cable's breach of contract claims.

### 3. Declaratory Judgment Claims

Monster Daddy contends that the court should dismiss, or in the alternative strike, Monster Cable's three claims for declaratory relief. Whether the court will entertain a counterclaim for declaratory judgment rests within the sound discretion of the court. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 296-97 (4th Cir. 2005). Even when a court has jurisdiction over a declaratory judgment action, "a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have come to a close." Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995). Some courts have exercised their discretion to dismiss declaratory judgment counterclaims pursuant to Rule 12(f) of the Federal Rules of Civil

Procedure[3] when the declaratory relief sought is redundant in light of the claims raised in the complaint. As one court explained:

> [I]f a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before . . . dismissing the action. Although federal courts normally should adjudicate all claims within their discretion, in the declaratory judgment context this principle yields to considerations of practicality and wise judicial administration. District courts have dismissed counterclaims under the Declaratory Judgment Act where they have found them to be repetitious of issues already before the court via the complaint or affirmative defenses.

Ortho-Tain, Inc. v. Rocky Mountain Orthodontics, Inc., No. 05 C 6656, 2006 WL 3782916, at *3 (N.D. Ill. Dec. 20, 2006) (internal quotation marks and citations omitted). Conversely, the court should adjudicate declaratory judgment actions "when it finds that the declaratory relief sought (i) will serve a useful purpose in clarifying and settling the legal relations in issue, and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Cont'l Cas. Co. v. Fuscardo, 35 F.3d 963, 965 (4th Cir. 1994) (internal quotation marks omitted).

Monster Cable asserts three counterclaims for declaratory relief. Two of the declaratory judgment actions address infringement of the MONSTER (single word) mark. First, Monster Cable requests a judicial declaration holding that it has priority of use for the MONSTER (single word) mark, and that it has not infringed any of Monster Daddy's enforceable rights with respect to using the MONSTER mark in connection with cleaning products. (Am. Answer 22.) Second, Monster Cable seeks a declaratory judgment that Monster Daddy has no trademark rights in the

---

[3] Rule 12(f) authorizes a court to "strike from a pleading an insufficient defense or any redundant . . . matter."

MONSTER mark and that Monster Daddy is infringing Monster Cable's rights to the mark by using it in connection to cleaning products. (Id. at 23.) Monster Daddy contends that the declaratory judgment claims should be dismissed because Monster Cable's "claims are irrelevant as Monster Daddy and Monster Cable's conduct is to be determined by the settlement agreement, not by a finding of who has a superior right." (Pl. Reply 4.)

The court declines to entertain Monster Cable's request for declaratory relief with respect to the issues of priority and infringement of the MONSTER mark. Monster Cable's declaratory judgment counterclaims raise the same legal issues that are already before the court. Monster Daddy has already raised the issues of priority and infringement of the MONSTER mark in its complaint. (Compl. ¶¶ 56-57.) Further, the court finds no evidence that the twin objectives of declaratory relief, clarification of legal relations and relief of uncertainty, would be promoted by entertaining these claims. Therefore, the court grants Monster Daddy's motion to strike counts four and five of Monster Cable's counterclaims.

Monster Cable also seeks a declaratory judgment holding that the settlement agreement does not extend to the following issues: (1) Monster Cable's applications to register the MONSTER mark and opposition proceedings in the European Union; (2) Monster Daddy's applications to register the MONSTER mark and opposition proceedings in the European Union; (3) Monster Cable's applications for the MONSTER mark and opposition/cancellation proceedings in Canada; (4) Monster Daddy's applications for the MONSTER mark and opposition/cancellation proceedings in Canada; (5) Monster Cable's use and intent to use application for the mark MONSTER GREEN; and (6) Monster Daddy's use and intent to use application for the mark MONSTER DADDY. (Am. Answer 23-24.) These identical legal

issues, however, are already before the court as relief sought in Monster Daddy's complaint. Monster Cable admitted the repetitious nature of the claim when it couched the six subjects for which it seeks declaratory relief as "the very same subjects at issue in the complaint filed by Plaintiff in this case." (Def. Sur Reply 9.) Because adjudication of these issues in the form of declaratory relief would be redundant and futile, the court grants Monster Cable's motion to strike Monster Cable's declaratory judgment counterclaims.

### C. Affirmative Defenses

Monster Daddy argues that the court should strike many of Monster Cable's affirmative defenses pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, maintaining that they fail to satisfy the Twombly and Iqbal pleading standards. (Pl. Mem. Supp. Mot. Dismiss 19-20.) Monster Cable contends that the plausibility standard is inapplicable to the pleading of affirmative defenses and argues that its affirmative defenses are sufficiently pled.

Rule 12(f) authorizes the court to "strike from the pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." When presented with a motion to strike, "the court must view the pleading under attack in a light most favorable to the pleader." Clark v. Milam, 152 F.R.D. 66, 71 (S.D. W. Va. 1993). A motion to strike is a drastic remedy that is disfavored by courts. Waste Mgmt. Holdings v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001). Therefore, "when a court strikes a defense, the general practice is to grant the defendant leave to amend." Banks v. Realty Mgmt. Serv., Inc., No. 1:10cv14 (JCC/TCB), 2010 WL 420037, at *1 (E.D. Va. Jan. 29, 2010) (internal quotation marks omitted).

As an initial matter, the court must determine whether the plausibility standard articulated in Twombly and Iqbal applies to affirmative defenses. To date, no federal circuit court of appeals has addressed this issue; however, the majority of district courts that have confronted the issue have concluded that affirmative defenses are subject to the heightened pleading requirements enunciated in Twombly and Iqbal. Racick v. Dominion Law Assocs., No. 5:10-cv-66-F, 2010 WL 3928702, at *4 (E.D.N.C. Oct. 6, 2010). The district courts within the Fourth Circuit that have addressed the issue have uniformly adopted the majority view. See, e.g., Francisco v. Verizon S., Inc., No. 3:09cv737, 2010 WL 2990159, at **7-8 (E.D. Va. July 29, 2010); Bradshaw v. Hilco Receivables, LLC, No. RDB-10-113, 2010 WL 2948181, at *3 (D. Md. July 27, 2010); Palmer v. Oakland Farms, Inc., No. 5:10cv00029, 2010 WL 2605179, at *5 (W.D. Va. June 24, 2010). These courts reasoned that pleading requirements, for both plaintiffs and defendants, are intended to provide the opposing party with fair notice of the factual basis for a claim or defense, and applying the Twombly and Iqbal heightened pleading standards to affirmative defenses promotes this intention. Bradshaw, 2010 WL 2948181, at *3. These courts rejected imposing disparate pleading standards among plaintiffs and defendants, noting that it does not

> make[] sense nor is it fair to require a plaintiff to provide the defendant with enough notice that there is a plausible, factual basis for her claim under one pleading standard and then permit the defendant under another pleading standard simply to suggest that some defense may possibly apply in the case.

Palmer, 2010 WL 2605179, at *4. Finally, courts adopting this view have reasoned that subjecting affirmative defenses to the plausibility standard of pleading preserves judicial

13

economy and efficiency by discouraging defendants from raising a myriad of boilerplate affirmative defenses. Hayne v. Green Ford Sales, Inc., 263 F.R.D. 647, 650 (D. Kan. 2009).

Some district courts outside of the Fourth Circuit have held that the Twombly and Iqbal pleading standard does not extend to affirmative defenses. See, e.g., Ameristar Fence Prods., Inc. v. Phoenix Fence Co., No. CV-10-299-PHX-DGC, 2010 WL 2803907, at *1 (D. Ariz. July 15, 2010); McLemore v. Regions Bank, Nos. 3:08-cv-0021, 3:08-cv-1003, 2010 WL 1010092, at *13 (M.D. Tenn. Mar. 18, 2010); Holdbrook v. SAIA Motor Freight Line, LLC, No. 09-cv-02870-LTB-BNB, 2010 WL 865380, at *2 (D. Colo. Mar. 8, 2010). These courts reason that in Twombly and Iqbal, the Supreme Court addressed only the pleading burden for plaintiffs' complaints, and its holding did not modify the pleading standards for affirmative defenses. McLemore, 2010 WL 1010092, at *13. Some courts relied upon the difference in wording between Federal Rule of Civil Procedure Rule 8(a), which applies to claims in a complaint, and Rules 8(b) and (c), which apply to the pleading of defenses. See Phoenix Fence Co., 2010 WL 2803907, at *1 (noting that unlike Rule 8(a), subsections (b) and (c) do not require a "short and plain statement of the claim *showing* that the pleader is entitled to relief" (quoting Fed. R. Civ. P. 8(a)(2))). One court has noted that the heightened pleading standards make less sense when applied to affirmative defenses because "it would be unreasonable to expect defendants to be aware of all the necessary facts or even to know for sure whether a particular affirmative defense is applicable, given that discovery has not occurred." Baum v. Faith Techs., Inc., No. 10-cv-0144-CVE-TLW, 2010 WL 2365451, at *3 (N.D. Okl. June 9, 2010). Similarly, another court has recognized that it makes sense to subject plaintiffs to heightened pleading requirements because they have more time to develop factual support for their claims, whereas the Federal

Rules of Civil Procedure afford a defendant only twenty-one days to answer a complaint and assert its affirmative defenses. Holdbrook, 2010 WL 865380, at *2; but see, Bradshaw, 2010 WL 2948181, at *3 (dismissing the concern that application of the plausibility standard would burden defendants because courts freely grant them leave to amend).

The court is persuaded that the pleading standard established in Twombly and Iqbal applies to affirmative defenses and adopts the majority view. Applying the plausibility standard to Monster Cable's affirmative defenses, the court finds that they are insufficiently pleaded.

Monster Daddy contends that affirmative defenses one, two, three, and eight are "bare legal conclusions" and therefore insufficient. The court agrees. Monster Cable pleaded these affirmative defenses as follows:

### First Affirmative Defense

Plaintiff is barred from recovery, in whole or in part, by the doctrine of unclean hands, by among other things, the actions alleged in Amended Counterclaim.

### Second Affirmative Defense

Plaintiff is barred from recovery, in whole or in part, by the doctrine of estoppel, by the actions alleged in the Amended Counterclaim.

### Third Affirmative Defense

Plaintiff is barred from recovery, in whole or in part, by the doctrine of waiver, by among other things, the actions alleged in the Amended Counterclaim.

### Eighth Affirmative Defense

Plaintiff is barred from recovery, in whole or in part, by failure to state a claim upon which relief can be granted.

(Am. Answer 10-11.) Monster Cable submits that its affirmative defenses contain sufficient factual allegations to survive a Rule 12(f) challenge because the factual background preceding its counterclaims as well as the allegations contained in its counterclaims are expressly incorporated by reference. (Def. Opp'n Mot. Strike Affirmative Defenses 8.) In analyzing the sufficiency of a claim, it is incumbent upon the court to first assess the factual allegations supporting each claim and then to determine whether those claims "plausibly give rise to an entitlement of relief." Iqbal, 129 U.S. at 1950. It is impossible for the court to discharge this duty when the factual support for Monster Cable's affirmative defenses is alluded to in such general terms. Although the plausibility standard of pleading is not an exacting one, the court "must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." Twombly, 550 U.S. at 558. Monster Cable's affirmative defenses, as pled, lack the minimum threshold of specificity to allow the court to assess their sufficiency. Based on the foregoing, the court strikes affirmative defenses one, two, three, and eight. However, the court grants Monster Cable leave to amend these deficiencies.

Finally, Monster Daddy contends that the court should strike affirmative defense nine because it is immaterial. (Pl. Mem. Supp. Mot. Dismiss 21.) The affirmative defense reads:

### Ninth Affirmative Defense

> Plaintiff is barred from recovery, in whole or in part, based upon Plaintiff's failure to have any enforceable rights in any of its purported trademarks that have not been used, nor are currently in use, irrespective of whether trademark applications has [sic] been filed for such marks.

(Am. Answer 12.) Monster Daddy argues that this affirmative defense is immaterial because the settlement agreement bars Monster Cable from contesting the new MONSTER mark. (Pl. Mem.

Supp. Mot. Dismiss 21.) As noted above, however, Monster Cable has alleged contractual defenses challenging Monster Daddy's right to enforce the settlement agreement. In light of Monster Cable's claims, it would be premature for the court to strike this affirmative defense at such an early stage of the litigation. Based on the foregoing, the court denies Monster Daddy's motion to strike affirmative defense number nine.

### D. Sanctions

On September 24, 2010, Monster Daddy filed a motion for sanctions against Monster Cable, contending that Monster Cable's pleading of its counterclaims and affirmative defenses contravenes Rules 11(b)(2) and 11(b)(3) of the Federal Rules of Civil Procedure. (Pl. Mem. Supp. Rule 11 Sanctions 5.) Monster Cable argues that Monster Daddy's motion for sanctions is frivolous and asks the court to award it costs and attorney fees pursuant to Rule 11(c)(2). (Def. Mem. Opp'n Rule 11 Sanctions.) After review, the court denies Monster Daddy's motion for sanctions and Monster Cable's request for costs and attorney fees.

Rule 11 authorizes the court to sanction a party to "deter future litigation abuse." Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 151 (4th Cir. 2002). To determine whether sanctions under Rule 11 should be imposed, the court employs an objective test of reasonableness, asking whether "a reasonable attorney in like circumstances would believe his actions to be factually and legally justified." Artco Corp. v. Lynnhaven Dry Storage Marina, Inc., 898 F.2d 953, 956 (4th Cir. 1990). This test does not require counsel to be correct in their legal argument; instead, counsel need only be reasonable. Miltier v. Downes, 935 F.2d 660, 664 (4th Cir. 1991).

Monster Daddy maintains that Monster Cable's counterclaims and affirmative defenses violate Rules 11(b)(2) and 11(b)(3). Rule 11(b)(2) states that a party's "claims, defenses, and

17

other legal contentions [must be] warranted by existing law . . . ." Under Rule 11(b)(3), a party's factual contentions must "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Although the court determined that many of Monster Cable's counterclaims and affirmative defenses are insufficiently pleaded under Iqbal and Twombly, Monster Daddy has failed to show that Monster Cable's conduct was unreasonable, warranting Rule 11 sanctions. Similarly, the court finds Monster Daddy's motion for sanctions is not frivolous, and therefore, Monster Cable is not entitled to costs and attorney fees pursuant to Rule 11(c)(2). Based on the foregoing, Monster Daddy's motion for sanctions and Monster Cable's request for costs and attorney fees are denied.

It is therefore

**ORDERED** that Monster Daddy's motions to dismiss, docket numbers 40 and 59, are granted in part and denied in part as set forth above. It is further

**ORDERED** that Monster Cable is granted leave to amend and correct within ten (10) days the deficient pleading of its fraud claim and affirmative defenses. It is further

**ORDERED** that Monster Daddy's motion for sanctions, docket number 53, and Monster Cable's request for costs and attorney fees are denied.

**IT IS SO ORDERED.**

                                            s/Henry M. Herlong, Jr.
                                            Senior United States District Judge

Greenville, South Carolina
November 23, 2010