IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Monster Daddy, LLC, | ) | |
| | ) | C.A. No. 6:10-1170-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Monster Cable Products, Inc.; Monster, LLC; and West Coast Customs, Inc., | ) ) | |
| | ) | |
| Defendants. | ) ) | |
| | | |
| Monster Cable Products, Inc.; and Monster, LLC, | ) ) | |
| | ) | (consolidated with C.A. No. 6:11-1126-TMC) |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Monster Daddy, LLC, | ) | |
| | ) | |
| Defendant. | ) ) | |

In this case, Monster Daddy, LLC (Monster Daddy) asserts various causes of action against Monster Cable Products, Inc. (Monster Cable), Monster, LLC, and West Coast Customs, LLC (West Coast) for trademark infringement. Before the court is Monster Cable's motion to dismiss. (Dkt. No. 195.) A hearing was held on this motion on May 9, 2012. For the reasons set forth below, the court denies the motion to dismiss.

**I.**

Monster Daddy is a company engaged in the manufacture of various waxes and cleaners under the MONSTER trademark since at least 1996.[1] Monster Cable, on the other hand, has been

---

[1] These products include, but are not limited to adhesives for general and commercial use; chemicals used to manufacture cleaning solutions; preservative treatments for industrial and commercial use; waxing, polishing, and buffing compounds; general purpose degreasing and cleaning preparations for general, household, and commercial

providing audio and video products since the 1970s. Since 2000, Monster Cable has been producing MONSTER SCREENCLEAN, an electronics cleaning product. It is undisputed that Monster Daddy does not currently produce any cleaning products specifically designed for electronics.

These parties have been engaged in litigation for several years. In 2007, the parties resolved a previous action, CA No. 6:06-293-HMH, by entering into a settlement agreement. (Dkt. No. 195-4.) In that settlement agreement, Monster Cable agreed to recognize Monster Daddy's rights to the MONSTER trademark in connection with various types of products, including its waxes and cleaners, along with other goods. Also granted to Monster Daddy was the right to extend its trademark into the natural zone of expansion for its various goods and services. In return, Monster Daddy expressly relinquished any claim it had to the MONSTER mark in connection with electronic cleaning products.

Monster Daddy filed the current action on May 7, 2010 (Dkt. No. 1) and its second amended complaint on November 28, 2011 (Dkt. No. 193).[2] In its second amended complaint, Monster Daddy asserts seventeen claims, including five new claims. These new claims are at issue here: injunctive relief (count 13)[3]; trademark infringement under the Lanham Act, 15 U.S.C § 1114 (count 14); unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) (count 15); equity and unjust enrichment (count 16); breach of contract (count 17).

Monster Cable filed the pending motion to dismiss on December 30, 2011. (Dkt. No. 195.) In the motion to dismiss, Monster Cable separates the new claims into two categories: the

---

use; all-purpose washing liquids; liquid soaps; laundry soaps; motor vehicle oils and lubricants; all-purpose disinfectants and sanitizing preparations; and all-purpose household adhesives.

[2] Monster Cable filed the other action action, C.A. No. 6:11-1126, on May 10, 2011, which was consolidated with this action on October 18, 2011. (Dkt. No. 188.)

[3] As noted by Monster Cable, injunctive relief is a means of relief, not a separate claim in and of itself. Accordingly, the court will not specifically address the claim for injunctive relief.

Lanham Act claims and the state law claims. As to the Lanham Act claims, Monster Cable asserts that Monster Daddy has failed to plead sufficient facts to set forth a plausible claim for relief under Rule 12(b)(6), Fed. R. Civ. P. As to the state law claims, Monster Cable asserts that Monster Daddy has not stated a plausible claim upon which relief may be granted. Additionally, Monster Cable asserts four affirmative defenses: statute of limitations; estoppel by laches; estoppel by acquiescence; and estoppel by release. The court will address each of these claims and defenses in turn.

## II.

The Federal Rules of Civil Procedure provide that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed. R. Civ. P. As the Supreme Court held, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The rule requires more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id*. at 678 (citations omitted).

As the court explained in *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (citing *Twombly*, 550 U.S. at 570). For a claim to have facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S at 556). And, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*. at 679. Furthermore, when "there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id*. However, when assessing a Rule 12(b)(6) motion to dismiss, the court should not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted).

With this standard in mind, the court turns now to the motion to dismiss.

### III.

As stated above, Monster Cable groups the new claims into Lanham Act claims and state law claims. The court will adopt that rubric and proceed accordingly.

### A. Lanham Act Claims

Monster Daddy is asserting new claims under the Lanham Act for infringement of a registered mark, 15 U.S.C. § 1114 and for federal unfair competition, 15 U.S.C. § 1125(a). The Lanham Act prohibits

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . .

15 U.S.C. § 1114. It also prohibits

> Use[] in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

As noted by Monster Cable, the analysis for a violation of either section is the same. To prevail under either claim, a plaintiff must prove

> (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred 'in commerce'; (4) that the defendant used

the mark 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers.

*People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001) (citations omitted). Here, Monster Cable asserts that (1) Monster Daddy does not own the MONSTER mark in conjunction with electronic screen cleaners; and (2) that there is no likelihood of confusion.

A plaintiff's failure to prove possession of a mark is typically fatal to a Lanham Act claim. Here, Monster Daddy does not possess a trademark specifically for electronic screen cleaners. However, a plaintiff may prove ownership of a mark by showing that the mark is within the plaintiff's natural zone of expansion. *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999) (stating that a defendant is prohibited from using a mark in a senior user's natural zone of expansion). Here, Monster Daddy does in fact assert ownership of the mark in connection with electronics cleaners through virtue of its natural zone of expansion.[4]

Likewise, a plaintiff cannot prevail on either of these Lanham Act claims unless it can prove a likelihood of confusion between the two competing marks. As the Fourth Circuit stated, "The unauthorized use of a trademark infringes the trademark holder's rights if it is likely to confuse an 'ordinary consumer' . . . ." *People for Ethical Treatment of Animals,* 263 F.3d 359 at 366 (citing *Anheuser-Bush, Inc. v. L&L Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992)). To

---

[4] The test for the natural zone of expansion contains five parts: the plaintiff's "(1) previous business activity; (2) previous expansion or lack thereof; (3) dominance of contiguous areas; (4) presently-planned expansion; and, where applicable (5) possible market penetration by means of products brought in from other areas." *Spartan Food Systems, Inc. v. HFS Corp.*, 813 F.2d 1279, 1283 (1987). Furthermore, to identify market penetration, the court should apply four additional factors: "(1) the volume of sales of the trademarked product; (2) the growth trends . . . in the area; (3) the number of persons actually purchasing the product in relation to the potential number of customers; and (4) the amount of product advertising in the area." *Id*. (citations omitted) (alteration in original).

determine if an ordinary consumer is likely to be confused by competing marks, the court should consider "'whether the use in its entirety creates a likelihood of confusion.'" *Id*. (quoting *Anheuser-Busch*, 962 F.2d at 319).

The court notes that determining both the natural zone of expansion and the likelihood of confusion require intensive factual determinations. While Monster Cable may ultimately prevail before a fact finder, at the motion to dismiss stage, it is entirely inappropriate for the court to engage in a fact-finding mission. *See Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (stating that when assessing a Rule 12(b)(6) motion to dismiss, the court should not "resolve contests surrounding the facts [or] the merits of a claim . . ."). Monster Daddy has included in its second amended complaint various factual allegations regarding its natural zone of expansion and the likelihood of confusion (*See, e.g.*, Dkt. No. 198 at 8, n. 9.) At this stage in the litigation, and for purposes of entry of this order, these allegations constitute sufficient facts to state a plausible claim. *Iqbal*, 556 U.S. at 678.

### B. State Law Claims

The court now turns to Monster Daddy's state law claims for breach of contract and unjust enrichment.

To prove a breach of contract claim, a plaintiff must show "(1) a binding contract entered into by the parties; (2) a breach or unjustifiable failure to perform the contract; and (3) damage suffered by the plaintiff as a direct and proximate result of the breach." *Fung Lin Wah Enterprises Ltd. v. East Bay Import Co.*, 465 F.Supp.2d 536, 542 (D.S.C. 2006) (citation omitted); *see also Fuller v. Eastern Fire & Cas. Ins. Co.*, 240 S.C. 75, 89, 124 S.E.2d 602, 610 (1962). Monster Cable alleges that Monster Daddy has not pleaded sufficient facts as to the alleged breach, at least in connection with the new counts, to survive a motion to dismiss. For

purposes of entry of this order, the court holds that Monster Daddy's numerous allegations throughout the complaint constitute sufficient facts to survive this motion.

As to the unjust enrichment claim, a party must plead "(1) benefit conferred by plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value." *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 341 S.C. 1, 8-9, 532 S.E.2d 868, 872 (2000). Likewise, as to the unjust enrichment claim, for purposes of entry of this order, the court holds that Monster Daddy's numerous allegations throughout the complaint constitute sufficient facts to survive the motion to dismiss.

### C. Monster Cable's Affirmative Defenses

The court will now turn to Monster Cable's affirmative defenses. As stated above, Monster Cable asserts that Monster Daddy's new claims are barred by the statute of limitations; estoppel by laches; estoppel by acquiescence; and estoppel by release. The court is unpersuaded.

As the Fourth Circuit has stated, "[a] Rule 12(b)(6) motion . . . does not generally invite analysis of potential defenses to the claims asserted in the complaint . . . . A court may consider defenses on a 12(b)(6) motion only 'when the face of the complaint reveals the existence of a meritorious affirmative defense.'" *Eastern Shore Markets, Inc. v. J.D. Assoc., Ltd. P'ship*, 213 F.3d 175, 185 (4th Cir. 2000) (citations omitted). Here, the court holds that the face of the complaint does not reveal the existence of any meritorious affirmative defenses. Accordingly, the court declines, at this stage of the litigation, to dismiss the new claims based upon the asserted defenses.

### IV.

In light of the foregoing, Monster Cable's motion to dismiss is **DENIED**. (Dkt. No. 195.)

This order is issued without prejudice to the right of Monster Cable to raise any issues addressed herein, as appropriate, in a motion for summary judgment.[5]

**IT IS SO ORDERED.**

s/Timothy M. Cain
Timothy M. Cain
United States District Judge

Greenville, South Carolina
June 29, 2012

---

[5] The court notes that Monster Cable filed a motion for summary judgment shortly after the hearing on its motion to strike/motion to dismiss and prior to the court's entering of this order. (Dkt. No. 218.)