IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| MONSTER DADDY, LLC, | ) | Civil Action No. 6:10-1170-MGL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MONSTER CABLE PRODUCTS, INC. | ) | |
| MONSTER, LLC, and WEST COAST | ) | |
| CUSTOMS, INC., | ) | **OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |
| | ) | |
| MONSTER CABLE PRODUCTS, INC., | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MONSTER DADDY, LLC, | ) | |
| | ) | |
| Counterdefendant. | ) | |
| ——————————————— | ) | |

Before this court is Monster Cable Products, Inc., Monster LLC, and West Coast

Customs, Inc.'s ("Monster Cable") Motion for Reconsideration (ECF No. 256) brought pursuant

to Federal Rule of Civil Procedure 54(b) for reconsideration of the court's order (ECF No. 251)

denying without prejudice Monster Cable's Motion for Summary Judgment  (ECF No. 218).

Also before the court is Monster Cable's Motion for Reconsideration of its Motion to Strike Jury

Entitlement.  (ECF No. 280.)  In this action, Plaintiff Monster Daddy, LLC ("Monster Daddy")

asserts several causes of action against Monster Cable stemming from Monster Cable's alleged

breach of the Confidential Settlement Agreement ("Settlement Agreement") entered between the

parties on October 25, 2007.  (ECF No. 1.)  Monster Cable seeks summary judgment pursuant to

Rule 56 of the Federal Rules of Civil Procedure as to all claims brought by Monster Daddy and its counterclaims against Monster Daddy. Upon consideration of the parties' briefs and arguments concerning these motions, for the reasons set forth below, the court grants Monster Cable's Motion for Reconsideration (ECF No. 256) and the Motion for Summary Judgment (ECF No. 218) in part, and denies the motions in part. The court grants Monster Cable's Motion for Reconsideration (ECF No. 280) of its Motion to Strike Jury Entitlement (ECF No. 219) as it pertains to the remaining claims which do not seek legal relief.

## FACTUAL AND PROCEDURAL BACKGROUND

Monster Daddy brought its initial action against Monster Cable on May 7, 2010 ("complaint"). (ECF No. 1.) Monster Daddy amended its complaint most recently on November 28, 2011 ("amended complaint") to assert seventeen counts generally based on breach of contract, trademark infringement, unfair competition, and unfair trade practices.[1] (ECF No.193.)

---

[1]Count I: Breach of Contract/ Unauthorized Trademark application for MONSTER GREEN
    Count II: Breach of Contract/ Unauthorized Foreign Trademark Applications
    Count III: Breach of Contract/ Unauthorized use of MONSTER and MONSTER ENGINEERED AND MADE IN THE USA
    Count IV: Breach of Contract/ Seeking to cancel US Registration No. 3,745,100
    Count V: Breach of Contract/ Preventing Monster Daddy's Performance
    Count VI: Declaratory Judgment That Monster Daddy Has Not Violated Lanham Act § 32, 15 U.S.C. § 1114-Trademark Infringement of a Registered Mark
    Count VII: Declaratory Judgment That Monster Daddy Has Not Violated Lanham Act § 43(a); 15 U.S.C. § 1125(a)-Federal Unfair Competition
    Count VIII: Trademark Infringement of a Registered Mark Lanham Act § 32, 15 U.S.C. § 1114)
    Count IX: Federal Unfair Competition Lanham Act § 43(a), 15 U.S.C. § 1125(a)
    Count X: South Carolina Unfair Trade Practices Act S.C. Code Ann. § 39-5-10, *et seq.*
    Count XI: Common Law Unfair Competition
    Count XII: Common Law Trademark Infringement
    Count XIII: Injunctive Relief (In light of Monster Cable's breaches and failures to honor the Settlement Agreement)
    Count XIV: Trademark Infringement of a Registered Mark- Lanham Act § 32, 15 U.S.C. § 1114
    Count XV: Federal Unfair Competition Lanham Act § 43(a), 15 U.S.C. § 1125(a)
    Count XVI: Equity and Unjust Enrichment
    Count XVII: Breach of Contract (i.e., duty of good faith and fair dealing implied in every contract)

After filing a motion to dismiss which was denied by the court (ECF No. 226), Monster Cable answered the amended complaint on March 9, 2012, and filed a counterclaim directed to claims of breach of contract and declaratory relief, as well as claims arising under the Federal Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et seq*. (the "Lanham Act") and common law trademark right claims.  (ECF No. 207 at 71.)

Monster Daddy is the owner of the MONSTER and MONSTER ENGINEERING trademarks associated with various industrial, commercial, and household cleaners, waxes, and adhesives.   (ECF No. 193, ¶¶ 50-53.)   Around 2000, Monster Cable began producing MONSTER SCREENCLEAN, an electronics screen cleaning product.  (ECF No. 195-1 at 3.) Monster Daddy and Monster Cable have been engaged in litigation for several years.  In 2007, the parties resolved a previous action, *Monster Daddy LLC v. Monster Cable Products, Inc.*, CA No. 6:06-293-HMH, by entering into a Settlement Agreement.  (ECF No. 195-4.)  In that Settlement Agreement, Monster Cable agreed to recognize Monster Daddy's rights to the MONSTER trademark in connection with various types of products, including waxes and cleaners, along with other goods. (ECF No. 195-4 at 3-4.)  Also granted to Monster Daddy was the right to extend its trademark into the natural zone of expansion for its various goods and services.  (ECF No. 195-4 at 3-4.)  In return, Monster Daddy expressly relinquished any claim it had to the MONSTER mark in connection with cleaners for consumer electronics and electronic accessories.   (ECF No. 195-4 at 4.)   In the instant action, Monster Daddy seeks specific performance, damages, and declaratory and injunctive relief in order to protect Monster Daddy's "natural zone of expansion" into the use of compounds, cleaners, and similar products for the purpose of cleaning screens of various electronic devices.  (ECF No. 193 at ¶ 161.)  Monster

Cable filed its motion for summary judgment on June 11, 2012. (ECF No. 218.) Monster Cable maintains that: 1) Monster Daddy is precluded from presenting any evidence at trial on liability or damages due to its failure to make timely, required disclosures; 2) the registered marks upon which Monster Daddy pursues its claims should be cancelled; 3) all of Monster Daddy's claims are barred as a matter of law by the defense of unclean hands; 4) summary judgment should be granted in Monster Cable's favor as to the counts of the amended complaint seeking recovery for Monster Cable's use of the MONSTER mark in connection with its screen cleaning products ("the ScreenClean Counts") based on the statute of limitations and related doctrines; and 5) Monster Daddy cannot prove damages or likelihood of confusion. (ECF No. 218.) Monster Daddy filed a response in opposition on July 2, 2012. (ECF No. 227.) Monster Cable filed a reply to Monster Daddy's response on July 12, 2012. (ECF No. 233.) This court heard arguments on this motion on August 21, 2012. At that hearing, the court denied Monster Cable's Motion to Strike Entitlement to Jury Trial. (ECF No. 237.) The court also allowed the parties to reconvene the Rule 30(b)(6) deposition of Monster Daddy after hearing Monster Cable's Motion to Compel. (ECF No. 217.) After the reconvened deposition, Monster Cable filed a supplemental response in support of its Motion for Summary Judgment, outlining new information brought out at the deposition on December 12, 2012. (ECF No. 247.) This court issued a text order on January 10, 2013, denying Monster Cable's Motion for Summary Judgment without prejudice and finding that issues of fact precluded the granting of summary judgment. (ECF No. 251.) Monster Cable filed its Motion for Reconsideration of the order on April 9, 2013. (ECF No. 256.) Monster Daddy filed a response on April 26, 2013 (ECF No.

266) and Monster Cable filed a reply to Monster Daddy's response on May 6, 2013.  (ECF No. 268.)  This court heard arguments on several pending motions on June 19, 2013.

## STANDARDS OF REVIEW

Monster Cable moved for reconsideration of this court's order denying its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 54(b).  Pretrial rulings remain subject to reconsideration by the trial court "and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities" as Federal Rule of Civil Procedure 54(b) expressly recognizes this court's authority and discretion to reconsider a previous interlocutory order at any time prior to final judgment.  *See Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003) (The "district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted."); *see also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge").  The Fourth Circuit has held that a motion to reconsider an interlocutory order is properly considered under Rule 54(b), though "it is not necessary to label under a particular rule number a motion for reconsideration of an interlocutory order." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1470-72 (4th Cir. 1991).

Although the Fourth Circuit has not specifically articulated the standard for evaluating such a motion, the Court has held that motions under Rule 54(b) are "not subject to the restrictive standards" of motions under Rule 60.  *Id.* at 1472 (internal citations omitted).  In this regard, district courts in the Fourth Circuit look to the standards under Federal Rule of Civil Procedure

59 for guidance. *See, e.g., R.E. Goodson Constr. Co. v. Int'l Paper Co.*, No. 4:02–4184–RBH, 2006 WL 1677136, at *1 (D.S.C. June 14, 2006). Therefore, the following are appropriate reasons for granting a Rule 54(b) motion: (1) to follow an intervening change in controlling law; (2) on account of new evidence; or (3) to correct a clear error of law or prevent manifest injustice. *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993); *see also Beyond Sys., Inc. v. Kraft Foods, Inc.*, No. PJM–08–409, 2010 WL 3059344, at *2 (D.Md. Aug.4, 2010) ("This three-part test shares the same three elements as the Fourth Circuit's test for amending an earlier judgment under Rule 59(e), but the elements are not applied with the same force when analyzing an interlocutory order.") Finally, "an order denying summary judgment is interlocutory, and leaves the trial court free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Zarrow v. City of Wichita Falls*, 614 F.3d 161, 171 (5th Cir. 2010) (internal citations and quotations omitted).

Monster Cable moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party has the burden of proving that summary judgment is appropriate. When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. Once the

moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  *See* Fed.R.Civ.P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed.R.Civ.P. 56 (c)(1)(A).  A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985).  Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion."  *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

"[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate."  *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1996).  In other words, "[s]ummary judgment is proper only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts."  *Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir.1987).  The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**ANALYSIS**

Monster Daddy's November 2011 amended complaint alleges 17 causes of action which the court groups as follows: Breach of Contract claims (Counts 1-5, 17) concerning alleged breaches of the Settlement Agreement; Declaratory Judgment claims (Counts 6-7) seeking a declaratory judgment that Monster Daddy has not violated the Lanham Act; various federal trademark claims, Lanham Act claims, and state law claims related to Monster Cable's use of the marks MONSTER and MONSTER ENGINEERED AND MADE IN THE USA in connection with a line of car care products sold through Defendant West Coast Customs, Inc. ("West Coast Customs" claims) (Counts 8-12); various claims for injunctive and equitable relief as well as Lanham Act claims related to Monster Cable's sale of electronic screen cleaning products which Monster Daddy asserts falls within the "natural zone of expansion" for Monster Daddy's products ("ScreenClean" claims) (Counts 13-16). (ECF No. 193.) As noted above, Monster Cable has filed counterclaims seeking cancellation of the Old and New Monster Registrations and alleging breach of the Settlement Agreement. (ECF No. 207.)

Specifically, Monster Cable moved for summary judgment raising the following grounds: 1) Monster Daddy is precluded from presenting evidence at trial on liability or damages due to its failure to make timely, required disclosures; 2) the registered marks upon which Monster Daddy pursues its claims should be cancelled due to Monster Daddy's use of the MONSTER mark without the more prominent use of the MONSTER ENGINEERING mark in violation of the Settlement Agreement and due to Monster Daddy's act of making false statements to the United States Patent and Trademark Office ("USPTO") in order to receive the newer MONSTER mark filing; 3) Monster Daddy's claims are barred as a matter of law based on unclean hands and

Monster Daddy's material breaches of the Settlement Agreement; 4) Monster Cable is entitled to judgment on the West Coast Customs counts because Monster Daddy cannot prove likelihood of confusion which is a required element of its infringement case against Monster Cable; 5) Monster Daddy's ScreenClean counts are barred by the statute of limitations and/or laches, acquiescence, and release and further, Monster Daddy is unable to show likelihood of confusion as to the electronic screen clean products; and 6) particularly relevant to Monster Daddy's breach of contract claims, Monster Daddy can prove no damages. The court first addresses Monster Daddy's breach of contract claims.

I.    **Breach of Contract Claims (Counts 1-5, 17).**

Particularly highlighted in its Motion for Reconsideration, Monster Cable asserts that Monster Daddy's state law breach of contract counts (counts 1-5 and 17) fail because Monster Daddy cannot prove that it suffered damage as a result of the alleged breach. (ECF No. 256-1 at 1-2.) To recover for a breach of contract Monster Daddy must prove: 1) the existence of a binding contract entered into by the parties; 2) a breach or unjustifiable failure to perform the contract; and 3) damage suffered by Monster Daddy as a direct and proximate result of the breach. *Fung Lin Wah Enter. Ltd. v. East Bay Import Co.*, 465 F. Supp. 2d 536, 542 (D.S.C. 2006); *see also Fuller v. Eastern Fire & Casualty Insur. Co.*, 124 S.E.2d 602, 610 (S.C. 1962). "The general rule is that for a breach of contract the defendant is liable for whatever damages flow as a natural consequence and proximate result of such breach." *Fuller*, 124 S.E.2d at 610. Under South Carolina law, the proper measure of compensation for breach of contract is the loss "actually suffered by the plaintiff as a result of the breach." *Minter v. GOCT, Inc.*, 473 S.E.2d 67, 70 (S.C. Ct. App. 1996). Generally, for damages to be recoverable, the evidence should be

such as to enable the court or jury to determine the amount of damages with reasonable certainty or accuracy. *Collins Entertainment, Inc. v. White,* 611 S.E.2d 262, 269 (S.C. Ct. App. 2005). "While neither the existence, causation nor amount of damages can be left to conjecture, guess or speculation, proof with mathematical certainty of the amount of loss or damage is not required." *Id.* (internal citation and quotations omitted).

As the plaintiff, Monster Daddy must establish that it has suffered damages as a direct and proximate result of the breach. See, e.g., *Pharmanetics, Inc. v. Aventis Pharmaceuticals, Inc.*, 182 Fed.Appx. 267, 274 (4th Cir. May 31, 2006) (unpublished decision) (affirming the district court's grant of summary judgment on Plaintiff's breach of contract and Lanham Act claims due to a lack of evidence on damages and noting that "[f]or a successful breach-of-contract claim for damages, a party must generally, among other things, produce evidence of damages."); *see also M&M Medical Supplies & Services, Inc. v. Pleasant Valley Hospital, Inc.*, 981 F.2d 160, 163 (4th Cir. 1993) (the nonmoving party must establish that triable issues exist "as to every element of its claims."). Monster Daddy alleges the following breaches of contract: 1) Monster Cable filing trademark applications with the USPTO concerning MONSTER GREEN in 2008; 2) Monster Cable filing a trademark application with the European Union trademark office in 2009; 3) Monster Cable preventing Monster Daddy's performance in surrendering the MONSTER registration without prejudice; 4) Monster Cable's actions on August 5, 2009, in filing a Petition to Cancel Monster Daddy's registration with the Trademark Trial and Appeal Board alleging that Monster Daddy agreed to abandon its MONSTER mark; 5) Monster Cable writing a letter on May 26, 2009 claiming that Monster Daddy breached the Settlement Agreement; and 6) Monster Cable's unauthorized use of the MONSTER and

MONSTER ENGINEERED AND MADE IN THE USA marks for its car care products.  (ECF No. 193 at 4-17.)  Assuming the existence of a contract, and further assuming that the contract was breached, Monster Daddy has failed to put forth any evidence of breach of contract damages.

Monster Daddy has had ample opportunity to come forth with the requisite evidence and avoid this result.  First, Monster Daddy failed to address its lack of *breach of contract* damages in its opposition to Monster Cable's Motion for Summary Judgment when Monster Cable claimed that judgment should be entered denying Monster Daddy any monetary relief.  (ECF No. 227.)  In response to Monster Cable's motion, Monster Daddy at most (and without the inclusion of any supporting exhibits or other documentation), raised the following as grounds for its entitlement to damages: 1) the Lanham Act allows for the recovery of the defendant's profits; 2) Monster Daddy testified to seeking attorney's fees; and 3) Monster Daddy's CEO claims he was harmed by having to think about and deal with the ordeal.  (ECF No. 227 at 39-40.)  Yet, no actual evidence accompanied or supported these allegations.  Then, this court permitted the reconvening of the 30(b)(6) deposition of Monster Daddy which afforded Monster Daddy with another opportunity to discuss its damages in this case and to develop testimony and evidence regarding the same.  (ECF No. 239.)  After the deposition, Monster Cable filed a supplemental response regarding its Motion for Summary Judgment outlining new information concerning Monster Daddy's damages.  (ECF No. 247.)  Monster Cable submitted the deposition testimony of Monster Daddy's Rule 30(b)(6) witness, Mr. Carter, which indicates that Monster Daddy is an inactive corporate entity which has not generated any revenue since at least 2005, and that a separate legal entity, APE, Incorporated, operates the Monster Daddy brands and pays legal

expenses.  (ECF No. 247-1.)  Due to this testimony, Monster Cable reiterated its position that Monster Daddy is unable to prove any damages suffered as a result of the alleged breaches of contract.  (ECF No. 247 at 4.)  In its sur-reply, Monster Daddy again stated that it has shown recoverable damages in several ways: 1) under the Lanham Act based on Monster Cable's alleged profits in the car care and ScreenClean markets which constitute "damages in the form of the profits of Monster Cable"; 2) Monster Daddy as a holding company of the mark is indebted to its subsidiaries for the costs of the litigation; and 3) Mr. Carter's alleged harm from "'having to think about this and having to deal with this . . . .'"  (ECF No. 250 at 1-3.)  In response to Monster Cable's Motion to Reconsider, Monster Daddy claims that it has shown sufficient evidence of the existence of damages under the Lanham Act in the form of profits for ScreenClean products and restates its rationale for claiming attorney's fees (based on having incurred debt to its subsidiaries), and damages theory based on Mr. Carter's suffering.  (ECF No. 266 at 21-23.)  The court has held several hearings on these issues and on those occasions Monster Daddy has not presented any other arguments (i.e., Monster Daddy's own lost profits or lost sales) to support its theory on damages.  On these occasions and in briefing to this court, Monster Daddy has failed to present any evidence, affidavits, or other discovery materials to demonstrate a genuine issue of material fact as to the existence of damages proximately resulting from the alleged breaches of contract.

Addressing Monster Daddy's arguments specifically outlined above, first, the court notes that the potential to recover Monster Cable's profits for alleged Lanham Act violations has no bearing on Monster Daddy's ability to recover under its separate breach of contract claims. Notably, even Monster Daddy itself does not appear to contend that it is entitled to recover

Monster Cable's profits as a measure of damages for breach of contract.  Even if that were Monster Daddy's contention and such an argument had been properly pled and supported by the evidence, Monster Cable's profits could not be considered profits lost by Monster Daddy as a direct and proximate result of the breach in this case.  *See South Carolina Federal Sav. Bank v. Thornton-Crosby Dev. Co., Inc.*, 423 S.E.2d 114, 115 (S.C. 1992).  Next, the attorney's fees Monster Daddy seeks associated with the costs of this litigation, are distinct from the damages required to recover for a breach of contract action and do not establish the requisite damages in this case.  *See generally Collins Entertainment, Inc.*, 611 S.E.2d at 269 (directed verdict proper where "none of the testimony presented provided any evidence of an amount of damages attributable to any breach of contract by [Defendant]").  As noted by Monster Daddy, the Settlement Agreement itself sets forth the prevailing party's entitlement to attorney's fees and costs in the event a breach is proven.  (ECF No. 193-1 at 8; *see also* ECF No. 266 at 23.)  These contractual attorney's fees based on prevailing in litigation, however, are most properly treated as a collateral issue, rather than a substantive issue. *Carolina Power & Light Co. v. Dynegy Marketing & Trade*, 415 F.3d 354, 361 (4th Cir. 2005).  This type of claim for attorney's fees is "'not a part of the merits of the action to which the fees pertain.'"  *Id.* (citing *Budinich v. Becton Dickinson and Co.*, 486 U.S. 196, 200 (1988)); *see also S.C. Dept. of Social Services v. Tharp*, 439 S.E.2d 854, 856 (S.C. 1994) ("Attorney's fees are not recoverable unless authorized by contract or by statute.")  Finally, South Carolina law, which governs the construction of the Settlement Agreement at issue here, does not make any provision for the "recovery of damages for emotional distress or mental anguish resulting from breach of contract, no matter what the intent of the breaching party was in failing to fulfill its obligations."  *Whitten v. American Mut.*

*Liability Ins. Co.*, 468 F. Supp. 470, 473 (D.S.C. 1977).  Monster Daddy has not supported its emotional distress theory with any law or factual evidence in the record demonstrating otherwise.

Thus, Monster Daddy has provided no evidence of any "damage" it has suffered as a result of the alleged breaches of contract.[2]  In fact, the evidence suggests otherwise and the law looks to the actual loss incurred by the party claiming the breach—Monster Daddy—as the proper measure of damages.  *See Minter*, 473 S.E.2d at 70.  Monster Daddy is further limited in this case by its failures to provide timely disclosures and is precluded from using any witness or information at the trial of this case that it failed to provide by previously imposed court deadlines if the witness or information has not otherwise been fully disclosed or made available to Monster Cable in the process of discovery in this case.   (ECF No. 262.)   Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates no genuine issue of material fact exists, thus entitling the moving party to judgment as a matter of law.  Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Viewing the facts in a light most favorable to Monster Daddy and drawing reasonable inferences in its favor, summary judgment in favor of Monster Cable is appropriate on Monster Daddy's breach of contract claims because a fact finder cannot award relief without evidence of damages.  *See Pharmanetics, Inc.*, 182 Fed. Appx. at 274.

---

[2]Even Monster Daddy's Supplemental Memorandum submitted to this court after the June 19, 2013, hearing on this matter does not aid Monster Daddy's cause on its breach of contract claims as it relates to proof on damages.  In the Supplemental Memorandum, Monster Daddy relies upon evidence regarding Monster Cable's profits, particularly on the West Coast Customs claims and also addresses its argument that Monster Cable breached the Settlement Agreement in such a severe manner that the contract is devoid of all value (i.e., discussion on rescission).  Even if Monster Daddy had pled rescission as an equitable remedy for breach of contract, Monster Daddy still has not evidenced any damages, an essential element of a breach of contract claim, which would then trigger any entitlement to rescission as a remedy for breach of contract once the breach has been established.  *See Ellie, Inc. v. Miccichi*, 594 S.E. 2d 485, 494 (S.C. 2004).

II.    **ScreenClean Claims (Counts 13-16).**

Monster Cable asserts that the ScreenClean counts of Monster Daddy's amended complaint are barred by the statute of limitations and laches. These counts of the amended complaint are based on alleged trademark infringement and federal unfair competition based on the Lanham Act as well as associated claims for unjust enrichment and equitable and injunctive relief. (ECF No. 193.) Although the Lanham Act does not provide an express statute of limitations, the Fourth Circuit has stated that "it is proper to use the analogous state limitations period for Lanham Act suits." *PBM Prod., LLC v. Mead Johnson Co.*, 639 F.3d 111, 121 (4th Cir. 2011). Under South Carolina law, the relevant and applicable statutory period is three years. *See* S.C. Code Ann. § 15-3-530 (three-year limitations period for actions other than for recovery of real property); S.C. Code Ann. § 39-5-150 (three-year limitations period for actions under the South Carolina Unfair Trade Practices Act). Additionally, the doctrine of laches will bar Lanham Act claims when the defendant is prejudiced by the plaintiff's unreasonable delay in bringing suit. *See id.*; *see also What-A-Burger of Virginia, Inc. v. Whataburger, Inc.*, 357 F.3d 441, 451 (4th Cir. 2004) ("[C]ourts use the doctrine of laches to address the inequities created by a trademark owner who, despite having a colorable infringement claim, allows a competitor to develop its products around the mark and expand its business, only then to lower the litigation boom."); *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 461 (4th Cir. 1996) ("In a trademark case, courts may apply the doctrine of estoppel by laches to deny relief to a plaintiff who, though having knowledge of an infringement, has, to the detriment of the defendant, unreasonably delayed in seeking redress.").

Monster Cable contends that the ScreenClean counts of Monster Daddy's amended complaint are all related to claims that accrued prior to the bar date of November 28, 2008, and thus barred based on the statute of limitations. (ECF No. 218-1 at 30.) Specifically, Monster Cable argues that Monster Daddy filed its first claims concerning Monster Cable's use of the MONSTER mark associated with electronic screen cleaning products on November 28, 2011, by way of its amended complaint, however, Monster Cable claims to have been using the MONSTER mark in connection with electronic screen cleaning products since 2000 and that Monster Daddy has known of this use since 2006. (ECF No. 218-1 at 31.) Although Monster Daddy does not deny this knowledge, Monster Daddy reasons that the parties previously resolved the issues between them by way of the Settlement Agreement and that the instant lawsuit concerns the breach of the Settlement Agreement and the effects of that breach. (ECF No. 227 at 23.) Consequently, Monster Daddy argues that the Settlement Agreement "re-started" the clock on the statute of limitations and laches and as a result, it was not until the Settlement Agreement was violated that Monster Daddy's causes of action accrued. (ECF No. 227 at 24.) Thus, Monster Daddy argues that the instant lawsuit is timely because it was filed within three years of the October 2007 Settlement Agreement and further contends that the May 7, 2010, filing of this lawsuit applies to the later filed ScreenClean counts based on the relation back doctrine. (ECF No. 227 at 25.)

The court finds that the ScreenClean claims are barred by the statute of limitations. Any remaining claims not barred by the statute of limitations, are barred by laches as discussed below. The Fourth Circuit's decision in *PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111 (4th Cir. 2011), a recent Lanham Act case, is instructive here. In *PBM Products*, PBM sued

Mead Johnson alleging false advertising in violation of the Lanham Act and commercial disparagement. Mead Johnson filed counterclaims alleging breach of contract, defamation, false advertising, and civil contempt. The district court disposed of Mead Johnson's Lanham Act counterclaims as a matter of law by granting PBM's motion for judgment at the close of the evidence at trial. Applying an applicable two-year Virginia statute of limitations, the Fourth Circuit held that the district court properly concluded that since Mead Johnson filed its counterclaim on May 18, 2009, Mead Johnson's counterclaims concerning PBM's infant formulas that accrued before May 18, 2007, were time-barred by the statute of limitations, and Mead Johnson's counterclaims concerning PBM's infant formulas that accrued thereafter were barred by laches. *Id.* at 121. Particularly, the court in *PBM Products* noted that PBM first began using the allegedly infringing advertising in connection with one infant formula in 2003 and another infant formula product in 2006—the statute of limitations barred counterclaims for these advertisements. *Id.*

Much like the parties in the instant matter, Mead Johnson and PBM were "familiar combatants on the Lanham Act battlefield." *Id.* at 116. The parties had previously resolved at least two previous disputes over their competing formulas. *Id.* Thus, the Fourth Circuit found that the district court's application of laches regarding advertisements for products published after May 18, 2007, was not in error because Mead Johnson knew about the false advertising claim since at least 2006 when the parties were involved in a trademark litigation that contained the exact same claim. *Id.* at 121. The court held that Mead Johnson's delay in bringing suit was unreasonable, further prejudiced PBM, and that allowing the suit to go forward would enable Mead Johnson to benefit from its own unreasonable delay. *Id.* at 121-122; *see also Jarrow*

-17-

*Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 837 (9th Cir.2002) ("We hold that the presumption of laches is triggered if any part of the claimed wrongful conduct occurred beyond the limitations period.  To hold otherwise would "'effectively swallow the rule of laches, and render it a spineless defense.'")

In the instant case, Monster Daddy filed the current litigation in May 2010 and subsequently filed the ScreenClean claims on November 28, 2011.  (ECF No. 193.)  Monster Cable has presented summary judgment evidence in the form of affidavits and exhibits which indicate that it has been using the MONSTER mark in connection with electronic screen cleaning products since at least 2000—evidence also presented in the 2006 litigation between the parties. (ECF No. 218-2 at 30-32, 41-47; ECF No. 256-3 at 30-32.)  Further, Monster Daddy was aware of Monster Cable's use of the MONSTER mark in connection with electronic screen cleaning products since at least 2006 and acknowledges that those products were an issue in the 2006 litigation  (6:06-cv-00293-HMH, ECF No. 46 at 16-18).   (ECF No. 247-1 at 33-34.) Accordingly, in view of *PBM Products*, Monster Daddy's claims related to Monster Cable's ScreenClean products accruing before November 28, 2008, are barred by the statute of limitations.

Additionally, the record also shows that Monster Daddy filed the ScreenClean counts at least five years after it became aware of Monster Cable's ScreenClean products and 18 months after initiating the current litigation.  In this case, since Monster Cable seeks summary judgment on an affirmative defense, it must conclusively establish all essential elements of that defense. *See  Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (defendant may prevail on a motion for summary judgment on an affirmative defense when it has produced credible evidence that would

-18-

entitle it to a directed verdict if not controverted at trial).  Once that presentation is made, the burden of production shifts to the plaintiff to "come forward with specific facts showing that there is a genuine issue for trial."  *White v. Rockingham Radiologists, Ltd.*, 820 F.2d 98, 101 (4th Cir.1999) (internal citations and quotation marks omitted).  If the movant fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, even if no opposing evidentiary matter is presented, because the non-movant is not required to rebut an insufficient showing.  *Ray Comm. v. Clear Channel Comm.*, 673 F.3d 294, 299-300 (4th Cir. 2012).

As noted by the Fourth Circuit, courts apply laches to address the inequities created by a trademark owner who, despite having a colorable infringement claim, has unreasonably delayed in seeking redress to the detriment of the defendant.  *Ray Comm.*, 673 F.3d at 300.  In determining whether laches operates as a defense to a trademark infringement claim, this court is to consider at least the following factors: 1) whether the owner of the mark knew of the infringing use; 2) whether the owner's delay in challenging the infringement of the mark was inexcusable or unreasonable; and 3) whether the infringing user has been unduly prejudiced by the owner's delay.  *Id.*  Considering these factors, the court finds that Monster Cable has met its burden of proof based on the undisputed evidence presented in this case.  First, it is undisputed that Monster Daddy knew of Monster Cable's infringing use of the mark.  (ECF No. 227 at 26-27.)  The dispute for Monster Daddy actually centers on the second factor—whether Monster Daddy was unreasonable in its delay of pursuing a remedy.  In *Ray Communications*, the Fourth Circuit noted that in the laches context, "(1) delay is measured from the time at which the owner knew of an infringing use sufficient to require legal action; and (2) legal action is not required

until there is a real likelihood of confusion." *Ray Communications*, 673 F.3d at 301 (citing

*What-A-Burger*, 357 F.3d at 451).   Monster Daddy argues that the existence of the Settlement

Agreement in this case means that Monster Daddy could not bring suit regarding the

ScreenClean matters until Monster Cable violated the Settlement Agreement.  (ECF No. 227 at

27.)  Although Monster Daddy is correct in noting that the court may in its discretion consider

the effect of any evidence of licenses or permission to use the mark on the reasonableness of

Monster Daddy's delay, the existence of the Settlement Agreement in this case does not operate

to halt the laches clock.  *See generally Ray Communications*, 673 F.3d at 304-305.  Here, the

laches clock began to run as of November 28, 2008, and bars any claims which arose after the

expiration of the statute of limitations.  A review of the Settlement Agreement clearly indicates

that the Agreement does not impose any obligations on Monster Cable regarding the trademark

MONSTER for electronic cleaners.  Paragraph Four of that Agreement represents the Settlement

Agreement's entire discussion relevant to the ScreenClean claims and states as follows:

> 4. Monster Daddy consents to and shall not oppose any trademark registration application by Monster Cable for the mark MONSTER for cleaners for consumer electronics and electronic accessories, compressed air, wipes for consumer electronics and electronics accessories, deoxit, cleaning cloths for consumer electronics and electronics accessories, LP/disc cleaners, stylus cleaners and associated solutions, cleaners and lotions of any of the above.

(ECF No. 193-1 at 4.)  Thus, the purported breach of contract violations alleged in this case,

noted above, have no relation to the rights Monster Daddy gave to Monster Cable regarding the

ScreenClean related marks.  Monster Cable could not have violated Paragraph Four of the

Settlement Agreement (nor does Monster Daddy allege this) which only obligates Monster

Daddy.  Accordingly, the existence of the Settlement Agreement and the purported breaches of

the non-ScreenClean related portions of the Settlement Agreement do not "re-set" the laches clock or excuse the Monster Daddy's delay in pursuing the ScreenClean claims.[3]  It was not until the filing of the amended complaint on November 28, 2011, that Monster Daddy made an effort to withdraw its express consent to Monster Cable's use of the MONSTER mark in connection with the ScreenClean products.

Finally, the court must look at whether the infringing user has been unduly prejudiced by the owner's delay as a matter of law.  "A defendant suffers economic prejudice when it relies on the trademark owner's inaction by developing a valuable business around the trademark." *Ray Communications*, 673 F.3d at 305.  Monster Cable has indicated that Monster Daddy's express consent to Monster Cable's use of the MONSTER mark related to its ScreenClean products has resulted in Monster Cable generating significant recognition and revenue on its ScreenClean products.   In support of this position, Monster Cable put forth the Declaration of David Tognoitti, Vice President and General Counsel of Monster Cable and supporting evidence of Monster Cable's ScreenClean sales and marketing materials.  (ECF No. 218-2 at 30-35.)  This evidence goes beyond a mere reference to the length of time Monster Cable has used the mark or the fact that expenditures have been made to promote an infringing product and shows economic prejudice based on Monster Cable's reliance on Monster Daddy's inaction concerning the ScreenClean claims.  *See Ray Communications*, 673 F.3d at 306.  (ECF No. 227 at 27-28.)  Monster Daddy cannot be permitted to benefit from its own unreasonable delay.  *See PBM Products*, 639 F.3d at 122.  The evidence here is sufficient to establish Monster Cable's

---

[3]Monster Daddy makes an alternative argument that some of the various breaches of the Settlement Agreement took place in the last three years but these breaches do not concern Monster Cable's use of the MONSTER mark in connection with the ScreenClean claims.  (ECF No. 227 at 25.)

entitlement to the affirmative defenses of statute of limitations and laches as a matter of law as to Monster Daddy's claims for damages and injunctive relief; no reasonable jury could find in favor of Monster Daddy on these claims.  In light of this conclusion, the court need not reach Monster Cable's alternative arguments for summary judgment on the ScreenClean claims.

III.    **West Coast Customs Claims (Counts 8-12).**

Monster Cable has also moved for summary judgment on Monster Daddy's various federal trademark claims, Lanham Act claims, and state law claims related to Monster Cable's use of the marks MONSTER and MONSTER ENGINEERED AND MADE IN THE USA in connection with a line of car care products sold through Defendant West Coast Customs, Inc. Monster Cable seeks judgment on the West Coast Customs claims based on a lack of evidence of likelihood of confusion and damages, required elements for trademark infringement and liability. (ECF No. 218-1 at 24-26.)   Monster Cable further claims that without a confusion survey, supported by expert testimony, or probative evidence of actual confusion, Monster Daddy can only speculate as to this element of its claims.  (ECF No. 218-1 at 26.)   Monster Daddy acknowledges that likelihood of confusion is a key element but highlights that this is an inherently factual inquiry precluding summary judgment.  (ECF No. 227 at 9.)  Monster Daddy points to the testimony of  Mr. Mrozinski (Monster Daddy Customer) and Jeff Newman (former employee of Monster Daddy), portions of which were included as footnotes to the opposition, as evidence of customer confusion which suggesting these individuals were unsure whether Monster Daddy or another entity made the Monster Cable car care product.  (ECF No. 227 at 13-14.)  Monster Daddy contends that confusion is likely among customers because both parties are manufacturing a product used to clean cars and the word MONSTER is on both products.  (ECF

No. 227 at 15.)  Additionally, Monster Daddy filed a Supplemental Memorandum with the court

to include, in relevant part, deposition testimony of Monster Cable's 30(b)(6) witness regarding

sales and anticipated profits for West Coast Customs car care products as evidence of damages.

Counts eight and nine of Monster Daddy's amended complaint allege federal unfair

competition and trademark infringement violations under the Lanham Act § 43(a), 15 U.S.C.

§ 1125(a) and § 32, 15 U.S.C. § 1114.

The Lanham Act prohibits:

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of
a registered mark in connection with the sale, offering for sale, distribution, or
advertising of any goods or services on or in connection with which such use
is likely to cause confusion, or to cause mistake, or to deceive . . . .

15 U.S.C. § 1114(1)(a).

Also prohibited is the:

Use[] in commerce any word, term, name, symbol, or device, or any combination
thereof, or any false designation of origin, false or misleading description of fact,
or false or misleading representation of fact, which--
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the
affiliation, connection, or association of such person with another person, or as to
the origin, sponsorship, or approval of his or her goods, services, or commercial
activities by another person. . . .

15 U.S.C. § 1125(a)(1)(A).

To prevail under either claim, a plaintiff must prove: 1) that it possesses a mark; 2) that

the defendant used the mark; 3) that the defendant's use of the mark occurred 'in commerce'; 4)

that the defendant used the mark 'in connection with the sale, offering for sale, distribution, or

advertising' of goods or services; and 5) that the defendant used the mark in a manner likely to

confuse consumers.  *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364

(4th Cir. 2001) (citations omitted).  The Fourth Circuit has articulated at least nine factors that

are relevant to the "likelihood of confusion" inquiry:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

*Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 153 (4th Cir. 2012) (finding that genuine issues

of material fact precluded summary judgment on a trademark infringement claim).  Although

summary judgment on the likelihood of confusion issue is certainly permissible in some cases,

the Fourth Circuit has noted that the relevant inquiry is inherently factual and depends on the

facts and circumstances of each case.  *Id.*  This list of factors is not intended to be exhaustive or

mandatory, further, the factors are not always weighed equally and not all factors are relevant in

every case. *Id.* at 153-154.  While it is not error for the district court to decide not to apply each

factor, the Fourth Circuit has cautioned district courts to at least provide a brief explanation for

its reasons in opting not to address a given factor.  *Id.* at 155.  Monster Daddy asks this court to

carefully review the exhibits and materials on file in order to thoroughly examine the similarities

in the Monster Daddy and West Coast Customs products.  (ECF No. 227 at 10.)  Monster Cable

also seems to ask this court to consider the purported major differences in the products as it

relates to the car care products.  (ECF No. 218-1 at 24-25.)

    With these considerations in mind, this court declines to view and weigh the evidence

presented much as it would during a bench trial in conducting an evaluation of the relevant

factors.  *Rosetta Stone Ltd.*, 676 F.3d at 155.  Monster Cable may ultimately prevail before a fact

finder, but at this juncture, the court will not engage in a fact-finding mission.  There are several other factors in the "likelihood of confusion" analysis that must be considered, i.e., intent and similarity of the marks.  Although the "likelihood of confusion" evidence appears very sparse as it relates to the West Coast Customs claims and primarily consists of the testimony of Mr. Mrozinski and Jeff Newman at most (particularly in light of the fact that Monster Daddy has designated no expert witnesses in this case and has no real means of presenting testimony opining as to the likelihood of confusion based on a survey or otherwise), the likelihood of confusion issue cannot be resolved as a matter of law.  Of course, as Monster Cable has noted, in *Rosetta Stone*, the plaintiff submitted both survey evidence and anecdotal evidence of actual confusion.  *Rosetta Stone Ltd.*, 676 F.3d at 156.  But, as also noted in that case, although both types of evidence are relevant, "neither category is necessarily required to prove actual confusion."  *Id.*  "The Lanham Act affords protection if confusion is 'likely'. . . . trademark owners may invoke the statute—and prevail under it—without establishing actual confusion." *Anheuser-Busch, Inc. v. L. & L. Wings, Inc.*, 962 F.2d 316, 32 n. 4 (4th Cir. 1992)(noting that the plaintiff did present evidence of actual confusion in the form of one of the defendant's wholesale purchasers who testified that his initial reaction to the t-shirt was that it was a copy of one of the plaintiff's shirts).

Further, Monster Daddy has presented some evidence to the court to support its damages theory under the Lanham Act in the form of the testimony of Monster Cable's 30(b)(6) witness which indicated some limited profits and some anticipated profits for the West Coast Customs car care products.  For these reasons, the court declines to grant summary judgment on the West Coast Custom Lanham Act counts and Monster Daddy is left to present evidence establishing

likelihood of confusion and the other elements of the Lanham Act claims as well as damages, subject to equitable principles and in a manner consistent with this court's previous order (ECF No. 262). *See Xoom v. Imageline*, 323 F.3d 279, 286 (4th Cir.2003), abrogated on other grounds by *Reed Elsevier, Inc. v. Muchnick*, 599 U.S. 154 (2010) (holding that in order to recover damages under the Lanham Act, the plaintiff must prove that there was a violation, that the plaintiff has been damaged, and that there is a causal connection between the violation and those damages); *see also Vantage, Inc. v. Vantage Travel Service, Inc.*, No. 6:08–2765, 2010 WL 3046992 (D.S.C. Aug. 2, 2010).

Counts 10 through 12 consist of state law claims brought pursuant to the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq.*, common law unfair competition, and common law trademark infringement respectively. Because the elements of common law and unfair infringement under South Carolina law are identical to the elements for proving a Lanham Act claim, this court also denies summary judgment as to counts 11 and 12 of the amended complaint subject to the conditions discussed above. *Shakespeare Co. v. Silstar Corp. of Am., Inc*., 802 F.Supp. 1386, 1399 (D.S.C.1992), rev'd on other grounds by, 9 F.3d 1091 (4th Cir.1993) (noting that the elements of common law unfair competition and trademark infringement under South Carolina law are identical to the elements for proving a Lanham Act claim); *see also Long Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc*., 43 F.3d 922, 930 n. 10 (4th Cir.1995) ("The test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition . . . ."). Plaintiff's state law claims rise and fall with the federal claims, thus the court will not address

them separately at this juncture.  *See generally Mazelmints, Inc. v. It's A Wrap, LLC*, No. 1:10–cv–1117, 2011 WL 2960873, *2 (E.D. Va. July 20, 2011).

Count 10 of Monster Daddy's amended complaint is a claim under the South Carolina Unfair Trade Practices Act ("SCUTPA") which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." S.C. Code Ann. § 39-5-20.  In order to bring an action under the SCUTPA, the plaintiff must demonstrate: 1) that the defendant engaged in an unlawful trade practice; 2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice; and 3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest.  *See* S.C.Code Ann. § 39-5-140; *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir. 1998).  Damages is a necessary element to establish a violation of the SCUTPA.  *Id.*; *see also Bessinger v. Food Lion, Inc.*, 305 F. Supp. 2d 574 (D.S.C. 2003); *Schnellmann v. Roettger*, 627 S.E.2d 742 (S.C. Ct. App. 2006) (summary judgment for the defendant proper where the plaintiffs suffered no pecuniary loss).  The SCUTPA states that "any person who suffers any *ascertainable loss of money or property*, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39–5–20 may bring an action individually, but not in a representative capacity, to recover actual damages . . . ."  S.C. Code Ann. § 39-5-140(a)(emphasis added).  Actual damages under the SCUTPA include special or consequential damages that are a natural and proximate cause of deceptive conduct.  *Global Protection Corp. v. Halbersburg*, 503 S.E.2d 483, 488 (S.C. Ct. App. 1988).  A prevailing party under the SCUTPA is entitled to reasonable attorney's fees, however, "actual damages are distinct from attorneys' fees."  *Mull v. Ridgeland Realty, LLC*, 693

-27-

S.E.2d 27, 31-32 (S.C. Ct. App. 2010). A party may not recover actual damages for both unfair trade practices and unfair competition in the same suit because allowing such damages would result in a double recovery. *Taylor v. Hoppin' Johns, Inc.*, 405 S.E.2d 410, 412 (S.C. Ct. App. 1991). The court has reviewed the parties' summary judgment arguments and briefings for specific consideration of Count 10 of Plaintiff's amended complaint as a SCUTPA claim.[4] Viewing the facts in a light most favorable to Monster Daddy and drawing reasonable inferences in its favor, summary judgment in favor of Monster Cable is appropriate on Monster Daddy's SCUTPA claim.

In its amended complaint, Monster Daddy seeks the following remedies for the alleged violation of SCUTPA stemming from Monster Cable's use of the MONSTER and MONSTER ENGINEERED AND MADE IN THE USA mark in connection with the West Coast car care products: recovery based on the harms and losses it proximately sustained; actual damages; injunctive relief; corrective advertising; profits; funds earned; prejudgment interest, attorney's fees; costs; economic damages; disgorgement of profits; compensatory damages; treble damages; expenses and costs to return Monster Daddy to the position it would have enjoyed but for the violation; and all other actions and awards (including monetary awards) for which recovery is permitted. (ECF No. 193 at ¶ 144.) As noted above, to establish a violation of SCUTPA, Monster Daddy must demonstrate that it has suffered an "ascertainable loss of money or property" as a result of Monster Cable's use of an unlawful trade practice. S.C. Code Ann. § 39-

---

[4] Monster Cable moves for summary judgment on all of the West Coast Customs counts, including Count 10, on the basis that Monster Daddy cannot prove likelihood of confusion. Although though this is a relevant issue for the West Coast Customs Lanham Act claims and corresponding state law common law unfair competition and common law trademark infringement claims, it is not a pertinent issue for Monster Daddy's SCUTPA claim and is not the basis for granting summary judgment in favor of Monster Cable.

5-140(a).  Relevant here, Monster Cable initially moved for partial summary judgment on the basis that Monster Daddy has not been damaged in any way by Monster Cable's car care products and accordingly, judgment should be granted denying Monster Cable any monetary relief.  (ECF No. 218-1 at 35.)  Monster Cable also continues to contend that Monster Daddy's failure to make timely pretrial disclosures bars Monster Daddy from presenting evidence upon which to support the existence of a material fact on all causes of action.  (ECF No. 218-1 at 7.) After the reconvened deposition of Monster Daddy's 30(b)(6) witness, Monster Cable sought the dismissal of Monster Daddy's SCUTPA count alleging Monster Daddy, an inactive corporate entity, is unable to prove any actual damages it suffered as a result of Monster Cable's actions. (ECF No. 247 at 2-4.)  Monster Daddy responded to Monster Cable's supplemental response by claiming that it has shown damages in the form of Monster Cable's profits for car care products, attorney's fees, and the harm caused by having to deal with the litigation.  (ECF No. 250 at 2-3.)

Although not expressly raised in Monster Cable's Motion for Reconsideration of this court's order denying Monster Cable's Motion for Summary Judgment (ECF No. 256), in this court's discretion and in light of the relevant arguments made in Monster Cable's Motion for Reconsideration of this court's order denying Monster Cable's Motion to Strike Monster Daddy's Jury Entitlement, this court grants summary judgment in favor of Monster Cable on Monster Daddy's SCUTPA claim.  Monster Daddy admits that it has suffered no ascertainable loss of money or profits which constitute the "damages" necessary to establish a violation of the SCUTPA.  (ECF No. 250 at 2-3.)  Monster Cable presented summary judgment evidence, by way of Monster Daddy's unrefuted 30(b)(6) deposition testimony demonstrating that Monster Daddy is an inactive entity which does not make any profits. (ECF No. 247-1.)  Further, any

such loss alleged (i.e., attorney's fees/costs of this litigation) was incurred by another entity and SCUTPA precludes Monster Daddy from seeking to bring an action in a representative capacity and also distinguishes actual damages from attorney's fees.  *See* S.C. Code Ann. § 39-5-140(a); *Mull*, 693 S.E.2d at 31-32.   Monster Daddy is further limited in this case by its failures to provide timely disclosures and is precluded from using any witness or information at the trial of this case that it failed to provide by previously imposed court deadlines if the witness or information has not otherwise been fully disclosed or made available to Monster Cable in the process of discovery in this case.   (ECF No. 262.)   Monster Daddy has pointed to no such evidence of actual damages suffered from the use of an unfair or deceptive act nor can the court discern any.   Thus, Monster Cable is entitled to summary judgment on Monster Daddy's SCUTPA claim (count 10).

IV.     **Declaratory Judgment Counts (Counts 6-7) /Monster Cable's Counterclaims.**

In Counts 6 and 7 of its amended complaint, Monster Daddy seeks a judicial declaration that Monster Daddy has not violated the Lanham Act by infringing upon any of Monster Cable's trademark rights and a declaration that Monster Daddy has not violated the Lanham Act through unfair competition and that it is further permitted to use and promote its goods by way of using the MONSTER DADDY mark.  (ECF No. 193 at 24-25.)  As identified by Monster Cable, these claims deal with Monster Cable's alleged infringement by filing an Intent to Use trademark application.  (ECF No. 218-1 at 27.)  Monster Cable claims that because Monster Cable is not selling a product under the MONSTER GREEN mark and because Monster Cable is not suing or threatened to sue Monster Daddy regarding the application to register the MONSTER DADDY mark, there is no justiciable issue and judgment should be granted against Monster Daddy.  (ECF

No. 218-1 at 27.)  Monster Cable also maintains that this court should not inject itself into the preliminary stage of the trademark registration process and should defer to the primary or initial jurisdiction of the USPTO as to the registration of a mark.  (ECF No. 218-1 at 27-28.)  Monster Daddy argues that there has been both an actual filing and an actual intent to use the mark "MONSTER GREEN" and argues that there is evidence that Monster Cable has engaged in marketing that is likely to cause confusion.  (ECF No. 227 at 16-17.)

A claim for declaratory judgment must present a justiciable case or controversy within the meaning of Article III of the United States Constitution.  *See* 28 U.S.C. § 2201(a).  The two pronged test for determining whether a case or controversy exists in a declaratory judgment action for trademark infringement requires a showing that: 1) the declaratory claimant has a real and reasonable apprehension of litigation; and 2) the claimant has engaged in a course of conduct which brought it into adversarial conflict with the declaratory defendant.  *Healthnet, Inc. v. Health Net, Inc.*, No. 2:01–0835, 2003 WL 43375 (S.D.W.Va. Jan. 7, 2003); *see also Windsurfing Int'l, Inc. v. AMF, Inc.*, 828 F.2d 755, 757-758 (Fed.Cir.1987).  The court concludes that a justiciable case or controversy exists here based on the Intent to Use filings for the mark "MONSTER GREEN," the parties' adverse legal interests, as well as the existence of Monster Cable's counterclaims seeking cancellation of the MONSTER marks.  These efforts satisfy both prongs of the above-mentioned test.  *White v. Nat'l Union Fire Ins. Co.*, 913 F.2d 165, 167–68 (4th Cir.1990) ("The question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issue of declaratory judgment.'")  Although there is a justiciable case or controversy between Monster Daddy and Monster Cable, the court finds

that there are questions of fact to be resolved by the fact finder as they pertain to the underlying Lanham Act claims, particularly the question of likelihood of confusion.  Thus, the court denies Monster Cable's Motion for Summary Judgment on Monster Daddy's declaratory judgment claims.

Next, the court addresses Monster Cable's counterclaims related to breach of contract and seeking cancellation of the MONSTER registration marks based on Monster Daddy's failure to abandon the old Monster registration and use of the MONSTER Mark without using MONSTER ENGINEERING more prominently.  (ECF No. 218-1 at 17-20.)  Monster Cable contends that there is no disputing Monster Daddy's failure to perform as directed by the Settlement Agreement's provisions.

Under the Lanham Act, district courts have the power to cancel registrations: "[i]n any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action . . . ." 15 U.S.C. § 1119.  Pursuant to 15 U.S.C. § 1119, district courts have concurrent jurisdiction with the United States Patent and Trademark Office to order the cancellation of federal trademark registrations.  *Shakespeare Co. v. Silstar Corp. of America, Inc.*, 9 F.3d 1091, 1092 (4th Cir. 1993).  Monster Daddy contends that the cancellation claims made by Monster Cable should be denied because the court previously denied Monster Cable's Motion for Summary Judgment which contained a cancellation argument among others.  (ECF No.187; ECF No. 227 at 5.) Monster Cable argues that it is not barred from renewing its motion on the cancellation claims, particularly because the case has developed since that motion was filed.  (ECF No. 233 at 11.)

The court declines to revisit its previous order (ECF No. 251) denying Monster Cable's Motion for Summary Judgment as it pertains to Monster Cable's counterclaims. The court finds that there are several issues of material fact remaining for the factfinder to resolve concerning the alleged breaches of contract on the part of Monster Daddy. This court heard oral arguments on these matters on June 19, 2013, and the court understood the parties to continue to have a fundamental disagreement regarding respective obligations under the Settlement Agreement regarding the marks and efforts made to abandon the marks. (ECF No. 292.) By way of a specific example, in its counterclaim, Monster Cable seeks the cancellation of Registration No. 3,745,100 (the newer Monster mark filing) in part because it alleges that Monster Daddy obtained the Registration by making false material statements to the USPTO with the intent to deceive. (ECF No. 207 at 83, ¶ 16.) Further, Monster Cable claims that use of the mark set forth in the newer MONSTER mark registration on goods in class 3 is likely to cause confusion and should therefore be cancelled in accordance with 15 U.S.C. §§ 1052(d), 1064(1) and/or 1119. (ECF No. 207 at 83, ¶ 16.) Although a mark is subject to cancellation if its registration was fraudulently obtained, see 15 U.S.C. §§ 1064(3) and 1120, in order to prevail, the plaintiff/counterclaimant must prove by clear and convincing evidence that defendant/counterdefendant "'knowingly ma[de] false, material representations of fact' and intended to deceive the Patent and Trademark Office." *See Resorts of Pinehurst, Inc. v. Pinehurst Nat'l. Corp.*, 148 F.3d 417, 420 (4th Cir.1998)(quoting *Metro Traffic Control, Inc. v. Shadow Network Inc.*, 104 F.3d 336, 340 (Fed.Cir.1997)). Monster Cable bears a "heavy" burden of proof on its counterclaim. *See Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir.1990). A reasonable fact-finder could conclude that Monster Cable has not met the burden of establishing by "clear and convincing evidence" that Monster Daddy knowingly made false,

material representations of facts on its trademark applications.  Accordingly, summary judgment in favor of Monster Cable on its counterclaims is not appropriate.

V.      **Parties' Jury Entitlement.**

Monster Cable also moves this court for an order reconsidering this court's order denying Monster Daddy's entitlement to a jury.  (ECF No. 219.)  Monster Cable argues that reconsideration of Monster Daddy's jury entitlement is now warranted because Monster Daddy concedes that it is not seeking the type of remedy that would entitle it to a jury trial.  (ECF No. 280-1.)  As mandated by the Seventh Amendment, any legal—as opposed to equitable right— whether created by statute or common law requires a trial by jury.  *See Tull v. United States*, 481 U.S. 412, 417, 107 S. Ct. 1831, 1835 (1987).  The nature of the issues involved in the action, and the remedies sought must be considered to establish whether a right to a jury trial exists. *Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990).  When a claim has both legal and equitable characteristics, the Seventh Amendment inquiry must focus predominantly on the nature of the remedy.  *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 955 F.Supp. 598, 603 (E.D. Va. 1997).  Often it is the availability of money damages that triggers the Seventh Amendment mandate for a jury trial.  *Id.* at 605 (E.D. Va. 1997).

Having found summary judgment appropriate in favor of Monster Cable on Monster Daddy's breach of contract, SCUTPA, and ScreenClean claims, the court need only consider Monster Daddy's entitlement to a jury on the Declaratory Judgment/Lanham Act counts of Monster Daddy's amended complaint.  The relief admittedly sought by Monster Daddy on these remaining claims is equitable in nature or otherwise in the province of the court—primarily the

recovery of Monster Daddy's profits (under the Lanham Act)[5] and attorney's fees as a prevailing party.  Particularly, an action for disgorgement of profits is traditionally considered an equitable remedy.  *Tull*, 481 U.S. at 424.  Further, "[i]t is well settled that a claim for attorneys' fees and costs under the Lanham Act does not entitle a party to a trial by jury."  *Empresa Cubana Del Tabaco v. Culbro Corp.*, 123 F.Supp.2d 203, 211 (S.D.N.Y. 2000)(citing several cases); *Ringling Bros.*, 955 F. Supp. at 605 ("Costs are merely incidental to and intertwined with other available remedies.  Thus, where the other available remedies are wholly equitable, costs are also an equitable remedy.").  Since Monster Daddy does not seek a legal remedy on its remaining claims, the court grants Monster Cable's Motion for Reconsideration of its Motion to Strike Jury Entitlement. (ECF No. 280).

Even though Monster Daddy is not entitled to a jury trial, Monster Cable has asserted three counterclaims, one of which is a breach of contract claim, and seeks monetary relief according to proof.  (ECF No. 207 at 86.)  Monster Cable specifically demands a jury trial as to its counterclaims and is so entitled to a jury trial.  (ECF No. 207 at 1.)  In as much as Monster Cable has not withdrawn its counterclaim for damages, Monster Cable's case will proceed before a jury as noticed by the court.

## CONCLUSION

For the above stated reasons, the court grants Monster Cable's Motion for Reconsideration (ECF No. 256) and the Motion for Summary Judgment (ECF No. 218) in part, and denies the motions in part as set forth in this order.  The court grants Monster Cable's

---

[5]Under the Lanham Act,  a "plaintiff shall be entitled . . . subject to the principles of equity, to recover: (1) the defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction." 15 U.S.C. § 1117(a).  "The [Lanham] Act nowhere explicitly refers to a jury." *Ringling Bros.*, 955 F.Supp. at 600.

Motion for Reconsideration (ECF No. 280) of its Motion to Strike Jury Entitlement (ECF No. 219) as it pertains to the remaining claims which do not seek legal relief.  The remaining claims, Monster Daddy's Declaratory Judgment and West Coast Customs Lanham Act and related claims (Counts 6, 7, 8, 9, 11 and 12) will be scheduled for a bench trial on AUGUST 5, 2013 in Spartanburg, South Carolina with a jury trial to follow on Monster Daddy's counterclaims on August 7, 2013.

IT IS SO ORDERED.

/s/Mary G. Lewis
United States District Judge

Spartanburg, South Carolina
July 2, 2013