IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| MONSTER DADDY, | ) | Civil Action No.: 6:10-1170-MGL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MONSTER CABLE PRODUCTS, INC., MONSTER, LLC, and WEST COAST CUSTOMS, INC., | ) ) ) | **OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |
| _____ | ) ) | |
| MONSTER CABLE PRODUCTS, INC., | ) ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MONSTER DADDY, | ) ) | |
| Counterdefendant. | ) ) | |
| _____ | ) | |

This matter is before the Court on Defendant Monster Cable Products, Inc., Monster, LLC and West Coast Customs, Inc.'s (collectively "Monster Cable") Motion for Attorney's Fees (ECF No. 267) seeking $93,404.50 in attorney's fees and $8,343.00 in costs. The motion was filed in response to this Court's order of April 23, 2013 (ECF No. 262) which sanctioned Plaintiff Monster Daddy ("Monster Daddy") for failing to comply with a court order, and required Monster Daddy to pay Monster Cable the reasonable costs for reconvening the Rule 30(b)(6) deposition of Monster Daddy and for the reasonable attorney's fees and costs associated with filing Monster Cable's Motion for Contempt of Court and Sanctions Against Monster Daddy. (ECF No. 240.) Monster Cable submitted declarations and other documentation in support of the request for attorney's fees.

Monster Daddy filed a response in opposition on May 17, 2013 (ECF No. 271) and Monster Cable filed a reply in support of the motion on May 28, 2013. (ECF No. 274.) Monster Daddy filed a sur-reply on June 7, 2013. (ECF No. 278.) The Court conducted a pre-trial conference and hearing on June 19, 2013, at which time the Court heard from the parties regarding the motion for attorney's fees and costs. (ECF No. 292.)

Having considered these filings and the arguments of counsel, as well as the entire record in this case, this Court grants Monster Cable's Motion for Attorney's Fees (ECF No. 267) but limits the relief granted as set forth herein.

## FACTUAL AND PROCEDURAL BACKGROUND

The background and the Court's rationale for sanctioning Monster Daddy is set forth fully in this Court's order of April 23, 2013 (ECF No. 262), and the Court reiterates and incorporates herein by reference all of its discussion and findings regarding Monster Daddy's conduct and the reasons for levying sanctions pursuant to Federal Rule of Civil Procedure 37. Monster Cable has, on several occasions, outlined Monster Daddy's several failures to comply with various court directives and orders throughout the course of this litigation by way of motions and in hearings before this Court. The Court need not revisit these shortcomings. Monster Cable has asked this Court on more than one occasion to levy very serious sanctions against Monster Daddy to deter dilatory conduct which has thwarted the pursuit of a resolution on the merits in this case.

The purpose of the Court's April 23, 2013 ruling was to require Monster Daddy to compensate Monster Cable for the reasonable costs for reconvening the Rule 30(b)(6) deposition and for the reasonable attorney's fees and costs associated with filing the discovery motion (ECF No. 240), which prompted the Court to issue limited sanctions against Monster Daddy. At that

time, the Court did not find the requested sanction of dismissal of Plaintiff's case to be appropriate. Accordingly, the Court found that less drastic sanctions were available in the form of an award of attorney's fees and limiting Monster Daddy's trial testimony in accordance with Federal Rule of Civil Procedure 37(c)(1) due to its failure to file timely pre-trial disclosures. At that time, the Court directed counsel for Monster Cable to file fee and cost-related documentation as evidence of the reasonable costs and fees associated with reconvening the Rule 30(b)(6) deposition and for filing the discovery motion which resulted in the imposition of sanctions.

Monster Cable's Motion for Contempt of Court and Sanctions Against Monster Daddy (ECF No. 240) was not Monster Cable's first motion for sanctions made in this case. On June 7, 2012, Monster Cable filed a motion to compel the reopening of the Rule 30(b)(6) deposition of Monster Daddy and the production of documents and for sanctions and appointment of a special master. After considering the briefs of the parties and arguments made at a hearing on the motion on August 21, 2012, this Court granted Monster Cable's Motion to Compel and Produce in part but denied Monster Cable's request for sanctions and for the appointment of a special master. (ECF No. 239.) The Court specifically found that Monster Daddy failed to make a good faith effort to adequately prepare its designated witness as required by the federal rules, allowed for the reconvening of the Rule 30(b)(6) deposition of Monster Daddy, and ordered the production of any documents identified by Monster Daddy's Rule 30(b)(6) deponent during his deposition that had not been produced and which were responsive to Monster Cable's discovery requests. (ECF No. 239.)

On September 14, 2012, Monster Cable filed its Motion for Sanctions and Motion for Contempt for Violation of Court Order ECF No. 239 due to Monster Daddy's continued failure to produce certain documents responsive to Monster Cable's discovery requests (ECF No. 240) as well

as supplemental briefing regarding same. (ECF No. 242.) Following the reconvened deposition of Monster Daddy, Monster Cable filed another brief in support of its motion outlining what it maintained was additional evidence of Monster Daddy's continued and intentional noncompliance with the Court's orders and seeking a full dismissal of Monster Daddy's complaint. (ECF No. 249.)

On August 26-29, 2013, and September 16, 2013, this Court held a bench trial and heard closing arguments from the parties. During the trial, Monster Cable brought a motion for default judgment against Monster Daddy upon the discovery of information previously sought concerning Monster Daddy's suppliers. (ECF No. 345.) Monster Cable contended that the Court's previous sanctions were insufficient to remedy the prejudice caused to Monster Cable as a result of Monster Daddy's conduct. This Court found the Motion for Default Judgment to be moot as a result of the Court's order resolving the parties' claims on the merits.

## **ANALYSIS**

In brief, this Court found that Monster Daddy should pay Monster Cable's reasonable attorney's fees and costs in reconvening the Rule 30(b)(6) deposition and for its reasonable fees and costs associated with preparing its Motion for Sanctions and Motion for Contempt for Violation of Court Order ECF No. 239. The Court found that the payment of fees and costs was equitable under the circumstances and was a less drastic sanction than other alternatives.

Upon finding that an award of attorney's fees is appropriate, the Court must determine whether the requested amount is reasonable. Under the "lodestar" formula, the Court should multiply the number of hours reasonably expended by counsel by a reasonable hourly rate. *See Child Evangelism Fellowship of South Carolina v. Anderson School Dist. 5,* No. 8:04-1866-HMH, 2007 WL 1302692 (D.S.C.2007). In determining reasonableness, the Court shall analyze the twelve

factors set forth in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir.1978). Those twelve factors are "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases." *Barber*, 577 F.2d at 226. Although the Court must consider all twelve factors, it is not required to apply them rigidly. In determining whether a requested rate is reasonable, the Court should consider "'prevailing market rates in the relevant community.'" *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir.1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

In the case at bar, on April 24, 2013, Monster Cable submitted declarations from counsel in support of its request concerning the following:

1. Motion to Compel Reopening of the Rule 30(b)(6) deposition of Monster Daddy and production of documents (ECF No. 217), including reply in support of the Motion to Compel (ECF No. 229);

2. Reconvened November 2012 Rule 30(b)(6) Deposition;

3. Motion for Sanctions and Contempt (ECF No. 240), including Supplemental Brief (ECF No. 242) and Response in Support of Motion for Sanctions (ECF No. 249), and Motion Hearing; and

4. Costs, including travel expenses relating to the reconvening of the Rule 30(b)(6) Deposition and related motions hearings.

At that time, Monster Cable also provided opposing counsel with a fee petition and supporting declarations of Monster Cable's counsel. On April 30, 2013, Monster Cable made a motion on the record to the same effect. (ECF No. 267.) On May 17, 2013, Monster Daddy filed its memorandum in opposition to Monster Cable's request for attorney's fees and costs. (ECF No. 271.) In that response, Monster Daddy did not particularly challenge or dispute Monster Cable's entitlement to fees and costs but instead challenged the amount sought as excessive and lacking sufficient explanation and documentation. In essence, Monster Daddy seeks a reduction of the amount requested by Monster Cable. Monster Cable subsequently filed a reply in support of the motion providing actual invoices of the law firms of Nexsen Pruet, LLC ("Nexsen Pruet") and LaRivere Grubman and Payne, LLP ("LGP") submitted for in camera review to further assist the Court in determining the reasonable amount of attorney's fees and costs. Between the two submissions to the Court, Monster Cable has briefed and addressed the *Barber* factors which support its request and put forth evidence to demonstrate the reasonableness of the rates.

A.    Analysis of the *Barber* Factors

The Fourth Circuit has held that there is no strict manner in which the *Barber* factors are to be considered and applied. *See E.E.O.C. v. Service News Co.*, 898 F.2d 958, 965 (4th Cir.1990). Although the Court is to review all twelve *Barber* factors, it need only make specific findings as to the factors it determines are relevant to its determination. *Id.* From the record, factors (4), (6), (7), (8), (10), and (11) do not seem to affect the fee concerning the instant motion, however the Court has carefully reviewed and considered each factor. This case is a significant matter and

representation of Monster Cable is based on seemingly longstanding relationships between client and counsel. Circumstances did require Monster Cable's counsel to spend a significant amount of time to address a number of discovery issues and the Court acknowledges that this might have impacted counsel's ability to pursue other work. Additionally, to some extent the discovery issues caused by Monster Daddy contributed to the amount of the fees incurred by Monster Cable in this case. However, dealing with Monster Daddy's lack of responsiveness to discovery did not necessarily require expertise beyond that of a typical litigator. Further, the Court does not find it appropriate to consider the ultimate resolution of the case and outcome in addressing this limited fee petition.

Several of the remaining factors are more relevant to this Court's consideration of the appropriateness of the fee and the hours expended in this case. First, having reviewed the relevant time entries, the Court finds that most of the time and labor expended by counsel for Monster Cable for the purposes of preparing for the reconvened deposition and the motion of sanctions was in fact reasonable under the circumstances presented in this case. The parties have been in litigation for several years. Counsel for Monster Cable has spent significant time and effort engaging in motion practice to ensure Monster Daddy's compliance with court orders and the rules of court. Next, the Court finds that although the reconvened deposition did involve some potentially difficult and novel issues related to the area of patent and trademark law, the issues related to the discovery dispute underlying this motion are not particularly novel or difficult. Similarly, no particularly special skills were required to brief and present Monster Cable's motion for sanctions. Still, the complexity of the underlying litigation justifies Monster Cable's selection of knowledgeable and competent lead counsel and equally skilled and competent local counsel to address the matter in this South Carolina

court.

The Court has carefully considered the customary fees for like work as a factor. Monster Cable seeks attorney's fees in the amount of $30,339 at rates of $190-520 per hour for three timekeepers (firm member, special counsel, and paralegal), and costs in the amount of $4,473.20 on behalf of Nexsen Pruet in connection with preparing an initial motion to compel and for sanctions (ECF No. 217) and related reply (ECF No. 229), a second motion for sanctions (ECF No. 240), and preparing for and attending the reconvened November 2012 Rule 30(b)(6) deposition of Monster Daddy. Monster Cable also seeks attorney's fees in the amount of $63,065.50 at rates of $375-575 per hour for three timekeepers (three partners), and costs in the amount of $3,869.80 on behalf of LGP in connection with reconvening the Rule 30(b)(6) deposition, preparing the second motion for sanctions, and attending the hearing on the motion. Thus, Monster Cable seeks an award of $101,747.50 which includes $93,404.50 in total attorney's fees and $8,343.00 in total costs.

The Court must first note that its sanctions order was limited to the attorney's fees and costs associated with the second motion for sanctions (ECF No. 240), and not the initial motion to compel/sanctions (ECF No. 217), so the Court will deduct the fees associated with the initial motion from Nexsen Pruet's calculation. After deducting fees and hours associated with the first motion to compel (ECF No. 217), Nexsen Pruet seeks $19,492.00 for a total of 57.8 hours of work and LGP seeks $63,065.50 for a total of 144.3 hours of work.

The Court must attempt to compensate attorneys at the prevailing market rate in the relevant community. *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169, 175 (4th Cir.1994). Normally, the relevant community is the judicial community in which the court sits, however, in some circumstances where it is reasonable to retain attorneys from other communities, the rates in those

communities may also be considered. *Id.* Monster Cable provided the Court with declarations from counsel outlining attorney's fees and costs associated with the instant dispute. (ECF No. 267.) In response to Monster Daddy's memorandum in opposition which challenged the substantiation for the motion (ECF No. 271), Monster Cable submitted a reply and supplemental declarations (ECF No. 274) to include the American Intellectual Property Law Association (AIPLA) Report of the Economic Survey 2011. (ECF No. 274-5.) The report provides some data on the hourly rates charged by intellectual property attorneys and associated patent agents who participated in the survey. The report classifies responses based on the location of respondents to include categories for "Other Southeast: North Carolina, South Carolina, Georgia, and Florida" and "Other West: Montana, Wyoming, Colorado, New Mexico, Idaho, Utah, Nevada, Arizona, Washington, Oregon, California, Alaska, Hawaii."[1]

The Court reviewed the AIPLA report however, this submission does not establish that the fees requested are comparable to customary fees for like work in the relevant market of South Carolina (or Monterrey, California) or the reasonableness of the rates requested. *See generally Grissom v. Mills Corp.*, 549 F.3d 313, 323 (4th Cir. 2008) (reversing fee award, in part because "Plaintiff offered no specific evidence that the hourly rates sought for his attorneys coincided with the then prevailing market rates of attorneys in the [district] of similar skill and for similar work, which our case law required him to do."); *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir.1990) ("In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which

---

[1] The report includes a category for Los Angeles Consolidated Metropolitan Statistical Area but it does not appear that Monterrey, California, the location of LGP, would be included in the calculations associated with the Los Angeles metropolitan area.

he seeks an award."). The AIPLA report data is simply not specific enough to highlight the rates in the relevant markets and Monster Cable did not file any affidavits from other attorneys to support its claims regarding the prevailing market rates of attorneys in the community for similar cases. *See Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)(Fee applicants bear the burden of establishing that the rates requested are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.").

Without specific support for the requested rates, the Court cannot appropriately conduct the required analysis of the reasonableness of hourly rates requested. *See Robinson v. Equifax Information Services, LLC*, 560 F.3d 235, 246 (4th Cir. 2009)(holding district court abused its discretion in awarding fee where court relied solely on affidavit of plaintiff's attorney in determining prevailing market rate). Of course, the Court may draw upon its own knowledge of litigation rates often charged in this district. *See Joe Hand Promotions, Inc. v. The Precint Bar–Daxlam, Ltd.*, No. 3:10–199–CMC, 2010 WL 3420189, *4 (D.S.C. Aug. 23, 2010) (finding requested fees to be reasonable based on court's "own knowledge of rates charged in litigation in this court" for "similar work in this geographic area.").

Additionally, the Court has considered the experience, reputation, and ability of the attorneys involved. Although the motion is not supported by any outside affidavits or other information about the abilities or reputation of counsel, the Court takes note of the affidavits of counsel which provide some insight about counsel's overall experience and years of practice. These submissions on behalf of highly experienced and very capable litigators and intellectual property attorneys support the requested attorney's fees. Even though the type of motion at issue does not necessarily require any specialized skills, some special abilities were likely required to prepare for

and conduct the reconvened Rule 30(b)(6) deposition of Monster Daddy.

Finally, the Court considers attorney's fees awards in similar cases as a relevant factor. The Court has reviewed several cases in this district including similar cases involving complicated and technical intellectual property claims and other complex issues. *See,.e.g. Super Duper, Inc. v. Mattel, Inc.,* No. 6:05–cv–1700–HFF–WMC, 2009 WL 866463 (D.S.C. Mar. 31, 2009) (finding a request for fees in the amount of $2,643,844.15 appropriate in a complex trademark and patent infringement case litigated for several years and involving experienced in-state and out-of-state counsel); *Uhlig v. Shirley*, 895 F. Supp. 2d 707 (D.S.C. Sept. 25, 2012)(finding attorney's fees sought to be excessive in comparison to similar actions involving misappropriation of trade secrets). The Court has also found the opinion of *Grayson Consulting, Inc. v. Cathcart*, to be instructive. *Grayson Consulting, Inc. v. Cathcart*, No. 2:07–02992–DCN, 2013 WL 436217 (Feb. 5, 2013) (awarding a petition for attorney's fees and costs related to a successful motion for sanctions for discovery abuses). These cases have provided additional insight on hourly rates and fees found to be reasonable by other courts in this district for similarly sophisticated legal work and under similar circumstances.

B.    Computing the Lodestar Figure

With the *Barber* factors in mind, in determining the proper fee award, the Court multiples the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Absent circumstances warranting adjustment, the lodestar figure represents the proper fee award. *See Blum v. Stenson*, 465 U.S. 886, 888 (1984). Based on these considerations, the Court makes the following determinations:

1.    Reasonable Hourly Rate

The balance of the relevant *Barber* factors weigh in favor of reducing the actual hourly rate. The Court concludes that the appropriate hourly rate for the attorneys in this case is $330 per hour. This is the hourly rate of the special counsel who worked on the case and is consistent with the Court's knowledge of hourly rates for other high level attorneys in the community. This rate also takes into account counsel's expertise and experience in the field of intellectual property and litigation.[2] Although some of the attorneys involved have significant legal experience which may command a higher hourly rate, the Court believes the hourly rate of $330 to be appropriate for the type of legal work performed and for which an award is being made. Further, some of the work at issue—particularly the work relating to the motion for sanctions—does not require an inordinate amount of special skill in the intellectual property law area in the opinion of the Court.

The Court also finds it appropriate to cut the requested paralegal rate from $190 to $150. A paralegal rate of $150 was recently approved in another case in this district and the Court finds this rate to be more in line with the going rates for work done by paralegals in this district. *See Uhlig, LLC v. Shirley*, 895 F. Supp. 2d 707, 717 (D.S.C. Sept. 25, 2012) (approving rate of $150 per hour for work done by paralegals at a law firm of similar size and national presence).

2.    Hours Reasonably Expended

In addition to establishing a reasonable hourly rate, the Court is required to calculate the number of hours reasonably expended by the prevailing party seeking attorney's fees. In making

---

[2]Other courts in this district have found that slightly lower hourly rates are more appropriate for work done by senior attorneys and partners. *Atkinson v. House of Raeford Farms, Inc.*, Docket Nos. 09–cv–1901, 09–cv3137, 2012 WL 2923246, at *3 (D.S.C. July 18, 2012) (awarding attorney's fees at a rate of $300/hour for law partners); *CT & T EV Sales, Inc. v. 2AM Group, LLC*, No. 7:11–1532–TMC, 2012 WL 3010911, at *4 (Jul. 13, 2012)(same).

this determination, "the court should not simply accept as reasonable the number of hours reported by counsel." *Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. 5*, No. 8:04-1866-HMH, 2007 WL 1302692, *2 (D.S.C. May 2, 2007)(internal citation omitted). The number of hours should not include hours that are "excessive, redundant, or otherwise unnecessary" in order to arrive at the number of hours that would properly be billed to the client. *Hensley,* 461 U.S. at 434.

At issue here is approximately 183.1 hours of attorney time and 19 hours of paralegal time. The Court finds this request excessive and applies a twenty percent (20%) reduction in order to arrive at a reasonable fee award.[3] The Court has considered and analyzed the hours submitted in the context of the relevant *Barber* factors and in light of Monster Daddy's claims about overbilling, duplicative time entries, and excessive hours on the part of Monster Cable's counsel. Specifically, the Court reviewed the detailed invoices from the law firms of Nexsen Pruet and LGP which were submitted to the Court in-camera to aid in the determination of the reasonable amount of attorney's fees and costs in this case. Included in the in-camera submission are summary charts of the time entries associated with the requested amounts. Based on these submissions, the Court was able to conduct a close review of the hourly time entries.

This is a significant case and has undoubtedly required a great deal of work on the part of

---

[3]"When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board-cut." *Bivins v. Wrap It Up, Inc*., 548 F.3d 1348, 1350 (11th Cir. 2008) (per curiam); *see also Uhlig, LLC v. Shirley*, 895 F. Supp. 2d 707, 717 (D.S.C. Sept. 25, 2012) (applying a sixty-percent reduction in attorney and paralegal time to arrive at a reasonable award); *Alexander S. By and Through Bowers v. Boyd*, 929 F.Supp. 925, 943 (D.S.C. Nov. 22, 1995)(applying a ten-percent reduction in the overall fee submission in addition to other deductions); *South Carolinians for Responsible Government v. Krawcheck*, No. 3:06–1640–MBS, 2012 WL 2830274 (D.S.C. July 9, 2012) (applying a thirty-five-percent reduction for partial success and further reducing the award by an additional five-percent to eliminate unnecessary duplication of effort).

the parties. Although Monster Daddy has engaged in conduct which caused an increase in hourly time commitments from Monster Cable, the Court does not believe that Monster Daddy should be saddled with a larger fee than deserved. Monster Cable has made some choices based on litigation strategy which are not fairly taxed to Monster Daddy, i.e., utilizing several professionals to address the matters at issue, developing presentations for the hearing, and making strategic decisions on how to address certain topics and issues during the reconvened deposition. On the whole, several professionals for Monster Cable spent significant amounts of time drafting and editing the motion, preparing for the reconvened deposition, and collaborating and developing strategy which has resulted in high fees. The Court finds the twenty-percent overall reduction necessary to account for these choices, unnecessary duplication of efforts, and overstaffing.[4] *See generally Sun Pub. Co. v. Mecklenburg News, Inc.*, 823 F.2d 818 (4th Cir.1987).

After making these findings, the reasonable attorney's fees to be awarded are as follows: $48,338.40 for attorney time for 146.48 hours of work at a rate of $330 per hour and $2,280.00 for paralegal time for 15.2 hours of work at a rate of $150 per hour. In reaching this conclusion, this Court has considered the *Barber* factors as well as the unique facts and circumstances of this matter. The Court has considered, but declines to make either an upward or downward adjustment to the lodestar figures above. *See Hensley*, 461 U.S. at 434. Any possible basis for such an adjustment has been reflected in the lodestar; thus, no further adjustment is necessary.

C.     Expenses/Costs

Monster Cable seeks costs in the amount of $8,343.00. This Court's April 23, 2013 order

---

[4]As noted above, the Court has already deducted Nexsen Pruet's hours associated with the first motion (ECF No. 217) which this Court previously indicated that it would not consider as part of this fee award.

directed Monster Daddy to pay Monster Cable the reasonable costs for reconvening the Rule 30(b)(6) deposition and the costs associated with filing the instant discovery motion. (ECF No. 262.) Counsel for Monster Cable seek to recover: 1) $4,158.20 for court reporter/videographer expenses; 2) $315.00 for the expense of hiring a security guard to attend the deposition; 3)$1,788.78 for travel related expenses incurred by national out-of-state counsel in connection with the reconvened deposition; and 4) $2,081.02 for travel related expenses incurred by national out-of-state counsel in connection with a motion hearing on the instant discovery dispute. The Court received copies of the receipts and invoices for these expenditures in connection with the declarations of counsel. Upon review of the documentation in support of these claimed expenses, the Court finds that most are reasonable and necessary. The Court agrees with Monster Daddy's assertion that the expense of $315.00 associated with a security guard's attendance at the deposition was unnecessary. Monster Daddy should not have to bear that expense and therefore the Court deducts $315.00 from the requested costs. The Court also declines to tax Monster Daddy with $2,081.02 associated with counsel's travel to attend the motion hearing. *See, e.g., Grayson Consulting, Inc.,* 2013 WL 436217 at *2 (finding it inappropriate to award travel costs associated with trips to court as part of the fee petition). Therefore, the Court awards Monster Cable costs in the amount of $5,946.98.

## **CONCLUSION**

After review of the pertinent factors outlined above and the arguments and submissions by the parties, the Court concludes that an appropriate and reasonable amount to award to Monster Cable for reasonable attorney's fees is $50,618.40 plus costs in the amount of $5,946.98. The Court believes this award is fair after considering all the relevant facts and circumstances involved in the

instant petition. For the reasons stated above, Monster Cable's Motion for Attorney's Fees (ECF No. 267) is granted as modified herein. Monster Daddy is hereby ordered to pay Monster Cable its fees and costs reasonably incurred as outlined above.

**IT IS SO ORDERED.**

/s/Mary G. Lewis
United States District Judge

March 19, 2014
Spartanburg, South Carolina