IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| MONSTER DADDY, | ) | Civil Action No.: 6:10-1170-MGL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MONSTER CABLE PRODUCTS, INC., | ) | |
| MONSTER, LLC, and WEST COAST | ) | |
| CUSTOMS, INC., | ) | **OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| MONSTER CABLE PRODUCTS, INC., | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MONSTER DADDY, | ) | |
| | ) | |
| Counterdefendant. | ) | |
| _____ | ) | |

This matter is before the Court on Defendant Monster Cable Products, Inc., Monster, LLC and West Coast Customs, Inc.'s (collectively "Monster Cable") Motion for Attorney's Fees (ECF No. 383.) Monster Cable seeks its reasonable attorney's fees and costs in the amount of $2,323,259.20 for its success on Plaintiff Monster Daddy's breach of contract and Lanham Act claims as well as Monster Cable's breach of contract and Lanham Act counterclaims.

Having considered these filings and the arguments set forth by counsel, as well as the entire record in this case, this Court grants Monster Cable's Motion for Attorney's Fees (ECF No. 383) in part as set forth below.

## FACTUAL AND PROCEDURAL BACKGROUND

Because the Court has recited the factual background underlying this litigation on several prior occasions, it will not do so again, except with respect to the pending Motions and to highlight a few relevant facts. Monster Daddy brought its initial action against Monster Cable on May 7, 2010 ("complaint"). (ECF No. 1.) Monster Daddy amended its complaint on November 28, 2011 ("amended complaint") to assert seventeen counts generally based on breach of contract, trademark infringement, unfair competition, and unfair trade practices. (ECF No.193.) Monster Cable answered the amended complaint on March 9, 2012, and filed a counterclaim directed to claims of breach of contract and declaratory relief, as well as claims arising under the Federal Trademark Act of 1946, as amended, 15 U.S.C. § 1051, et seq. (the "Lanham Act") and common law trademark right claims. (ECF No. 207 at 71.)

Monster Daddy is the owner of the MONSTER and MONSTER ENGINEERING trademarks associated with various industrial, commercial, and household cleaners, waxes, and adhesives. (ECF No. 193, 50-53.) Around 2000, Monster Cable began producing MONSTER SCREENCLEAN, an electronics screen cleaning product. (ECF No. 195-1 at 3.) Monster Daddy and Monster Cable have been engaged in litigation for several years. In 2007, the parties resolved a previous action, *Monster Daddy LLC v. Monster Cable Products, Inc.*, CA No. 6:06-293-HMH, by entering into a Settlement Agreement ("Settlement Agreement"). (ECF No. 195-4.) In that Settlement Agreement, Monster Cable agreed to recognize Monster Daddy's rights to the MONSTER trademark in connection with various types of products, including waxes and cleaners, along with other goods. (ECF No. 195-4 at 3-4.) Also granted to Monster Daddy was the right to extend its trademark into the natural zone of expansion for its various goods and services. (ECF

No. 195-4 at 3-4.)  In return, Monster Daddy expressly relinquished any claim it had to the MONSTER mark in connection with cleaners for consumer electronics and electronic accessories. (ECF No. 195-4 at 4.)  On April, 23, 2013, this Court granted in part and denied in part Monster Cable's Motion for Contempt of Court and Sanctions against Monster Daddy (ECF No. 240) brought pursuant to Federal Rule of Civil Procedure 37 and allowed Monster Cable to reconvene a Rule 30(b)(6) deposition and awarded reasonable attorney's fees and costs associated with reconvening the deposition and filing a motion as a discovery sanction stemming from Monster Daddy's previous conduct in this case in failing to comply with court orders.  (ECF No. 262.)  In a follow up order, this Court ordered Monster Daddy to pay Monster Cable reasonable attorney's fees in the amount of $50,618.40 plus costs in the amount of $5,946.98. (ECF No. 428.)

Monster Cable moved for summary judgment in this matter on June 11, 2012.  (ECF No. 218.)  On July 2, 2013, this Court issued an opinion and order granting, upon reconsideration, summary judgment in favor of Monster Cable on Monster Daddy's breach of contract claims as well as Lanham Act and related claims concerning Monster Cable's Screen Clean products.  (ECF Nos. 256 & 305.)  On August 26-29, 2013, and September 16, 2013, this Court held a bench trial on the remaining claims, Monster Daddy's Declaratory Judgment claims, Monster Daddy's Lanham Act and related claims concerning Monster Cable's West Coast Customs products, and Monster Cable's counterclaims, and heard closing arguments from the parties.  During the trial, Monster Cable brought a motion for default judgment against Monster Daddy upon the discovery of information previously sought in discovery concerning Monster Daddy's suppliers. (ECF No. 345.) Monster Cable contended that the Court's previous sanctions were insufficient to remedy the prejudice caused to Monster Cable as a result of Monster Daddy's conduct.  This Court found the

Motion for Default Judgment to be moot as a result of the Court's order resolving the parties' remaining claims on the merits in favor of Monster Cable.  (ECF No. 377.)  Monster Cable filed the instant post-trial Motion for Attorney's  fees on October 14, 2013 seeking $2,323,259.20 in attorney's  fees and costs in connection with defending, prosecuting and ultimately prevailing on the claims and counterclaims at issue in this case.  (ECF No. 383.)  Monster Cable also filed a Bill of Costs on October 14, 2013.  (ECF No. 384.)  Monster Daddy filed a response in opposition to the Motion for Attorney's Fees on January 6, 2014.  (ECF Nos. 409-413.)  On January 21, 2014, Monster Cable filed a reply in further support of its Motion for Attorney's fees (ECF No. 421) and a Notice of Supplemental Authority on April 30, 2014.  (ECF No. 432.)

## ANALYSIS

In the instant post-trial motion, Monster Cable seeks its reasonable attorney's fees and costs as a "prevailing party" under the parties' Settlement Agreement and under the Lanham Act's provision for exceptional cases.  (ECF No. 383-1 at 3-4.)  Monster Cable contends that its success in this case entitles it to a full recovery because the claims in this case were either breach of contract or Lanham Act claims or closely related, such that a full award is appropriate.  (ECF No. 383-1 at 5.)  Monster Cable acknowledges this Court's discretion in determining a proper and appropriate award in such a case.

Monster Daddy argues in response that Monster Cable's motion should be denied in its entirety, or in the alternative, that Monster Cable's award of attorney's fees and costs be significantly reduced.  (ECF No. 409 at 1-2.)  Monster Daddy maintains that it acted and pursued this litigation in good faith an in accordance with its beliefs as to its rights under the Settlement Agreement and pursuant to applicable law. (ECF No. 409 at 9.)  Monster Daddy further contends

that Monster Cable is improperly attempting to use this Court's prior discovery sanctions order as evidence of bad faith relevant to the instant matter. (ECF No. 409 at 9.) Monster Daddy also contends that Monster Cable has not proven that its fee request is reasonable. (ECF No. 409 at 10.) Before determining whether the requested fees are reasonable, the Court must first evaluate whether Monster Cable is entitled to fees and costs under both the Settlement Agreement and the Lanham Act.

1. Breach of Contract Claims

As an initial matter, this Court must determine whether attorney's fees are permitted under the Settlement Agreement signed by the parties in 2007. The Settlement Agreement provides for the recovery of reasonable attorney's fees and costs by the prevailing party "in the event of any breach of [the] Agreement." (*See* Settlement Agreement at § 12.11, ECF No. 421-7 at 8). Monster Cable claims that it is the prevailing party as to Monster Daddy's breach of contract claims and Monster Cable's breach of contract counterclaims by virtue of this Court's previous rulings and the language of the Settlement Agreement, which contemplates that a defendant alleging a breach of the Settlement Agreement can also be a prevailing party. (ECF No. 383-1 at 7-8.) Monster Daddy does not seem to specifically dispute Monster Cable's entitlement to attorney's fees pursuant to the Settlement Agreement, and instead focuses its arguments on whether this case is exceptional under the Lanham Act and the overall reasonableness of the fee request. (ECF No. 409 at 30.)

The Settlement Agreement is governed by South Carolina law. (*See* Settlement Agreement at ¶12.8 ("This Agreement shall be governed by and construed in accordance with the laws of the United States and the State of South Carolina…."), ECF No. 421-7 at 7.) Accordingly, the relevant question for the Court is whether, under South Carolina law, Monster Cable would be considered

the prevailing party in this multi-count complaint on those claims which concern a breach of the governing Settlement Agreement.  The Supreme Court of South Carolina has previously found that a prevailing party is "'one who successfully prosecutes an action or successfully defends against it, prevailing on the main issue, even though not to the extent of the original contention [and] is the one in whose favor the decision or verdict is rendered and judgment entered.'" *Sloan v. Friends of Hunley, Inc.*, 393 S.C. 152, 157, 711 S.E.2d 895, 897 (2011) (citing *Heath v. Cnty. of Aiken*, 302 S.C. 178, 182–83, 394 S.E.2d 709, 711 (1990)).  "A court determines the prevailing party by evaluating the degree of success obtained." *Heath*, 302 S.C. at 183, 394 S.E.2d at 711.

Under the "American Rule," the parties to a lawsuit generally bear the responsibility of paying their own attorney's fees.  *See Layman v. State*, 376 S.C. 434, 451, 658 S.E.2d 320, 329 (2008)(citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986)).  There are some exceptions to this rule, including the award of attorney's fees when authorized by contract or statute.  *Baron Data Sys., Inc. v. Loter*, 297 S.C. 382, 383, 377 S.E.2d 296, 297 (1989).  Thus, the Court must consider the claims individually to identify either a contractual or statutory basis for an award of attorney's fees.

Here, the court agrees that Monster Cable is the prevailing party on the breach of contract claims.  This Court ultimately granted Monster Cable summary judgment on Monster Daddy's breach of contract claims based on a lack of evidentiary proof as to damages attributable to any alleged breach of the Settlement Agreement.  (ECF No. 305 at 9-14.)  Monster Cable also prevailed at trial on its breach of contract counterclaim and this Court found that Monster Daddy materially breached the 2007 Settlement Agreement by failing to abandon the Old Monster Registration and by failing to use MONSTER in the manner proscribed and contemplated by the Settlement

Agreement. (ECF No. 377 at 28-29.)   Accordingly, Monster Cable has satisfied the threshold requirement of establishing that it is a prevailing party under the Settlement Agreement, a significant issue in this case.  The Court must determine what fee is a reasonable amount to award for success on these claims.

2.  Lanham Act Claims

Monster Cable also claims entitlement to attorney's fees under Section 35 of the Lanham Act. (ECF No. 383-1 at 9.)   The Lanham Act allows the court to award attorney's fees to the prevailing party in exceptional cases. 15 U.S.C. § 1117(a). "[T]he purpose of the attorneys' fees amendment to the Lanham Act was to provide for an award in exceptional cases in which equity called for an award in the sound discretion of the district judge." *Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 31–32 (1st Cir. 2002).  Monster Cable argues that this is an "exceptional case" as contemplated by the statute, maintains that it has "proven that Monster Daddy's conduct, as a whole, was highly prejudicial and done in bad faith," and as evidence points to Monster Daddy's litigation tactics, purported meritless claims, failure to comply with the terms of the Settlement Agreement, and willful and deliberate conduct which it deems to have been in bad faith.  (ECF No. 383-1 at 11.) Monster Daddy argues that this case is not exceptional under the Lanham Act and characterizes the action as a simple and non-malicious disagreement over the interpretation of a settlement contract. (ECF No. 409 at 5.)

An award of attorney's fees to the prevailing party under 15 U.S.C. § 1117(a) is equally available to prevailing plaintiffs and defendants. *The Scotch Whisky Ass'n v. Majestic Distilling Co., Inc.*, 958 F.2d 594, 599 (4th Cir.1992) (establishing that, unlike a prevailing plaintiff, a prevailing defendant is required to show "[s]omething less than 'bad faith' " to prove an

"exceptional case").  The statute does not define what constitutes an exceptional case, but the Fourth Circuit has defined such a case as one in which the parties' conduct was "malicious, fraudulent, willful or deliberate in nature." *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir. 2001) (internal citations omitted); *Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc.*, 885 F.Supp. 141, 144 (M.D.N.C.1994), aff'd, 87 F.3d 654 (4th Cir. 1996)("An exceptional case is one where the infringement is deliberate, willful, fraudulent, or malicious.")(internal citations omitted). The Fourth Circuit historically employed a dual standard of proof upon prevailing plaintiffs and defendants— a prevailing plaintiff seeking attorney fees must  demonstrate that the defendant acted in bad faith. However, when an alleged infringer is the prevailing party, he can qualify for an award of attorney fees upon a showing of something less than bad faith by the plaintiff.  *See Retail Services, Inc. v. Freebies Publishing*, 364 F.3d 535, 550 (4th Cir. 2004).[1] "Some pertinent considerations for judging a plaintiff's (or counterclaim plaintiff's) conduct when the defendant prevails include economic coercion, groundless arguments, and failure to cite controlling law. Thus, the focus tends to be on the plaintiff's litigation conduct or pre-litigation assertion of rights." *Id.* at 550–51. "The question, however, is not whether snippets

---

[1]However, in *Retail Services, Inc. v. Freebies Publishing*, the Fourth Circuit noted that the different standards of proving an exceptional case for the award of attorney's fees may not have survived the Supreme Court's decision in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), in which the Supreme Court rejected a standard that differentiated between prevailing plaintiffs and defendants for the recovery of attorney's fees in the copyright context. *Retail Servs.*, 364 F.3d at 550 n. 7. In light of the footnote in *Retail Services* and the Supreme Court's decision in *Fogerty*, a recent district court decision from the Eastern District of North Carolina applied the higher bad faith standard to a prevailing defendant's request for attorney's fees in a trademark infringement case and denied the request for attorney's fees. *See  Ray Commc's, Inc. v. Clear Channel Commc'ns*, No. 2:08–cv–24–BO, 2011 WL 3207805 (E.D.N.C. July 26, 2011).

of the record or isolated arguments clearly lack merit." *Id.* at 551. In sum, the court must "determine, in light of the entire case, whether [the losing party's] claims and assertions were so lacking in merit that the action as a whole was 'exceptional.'" *Id.* Monster Cable has alerted this Court to a recent and relevant Supreme Court case which states that the determination of whether a case is "exceptional" in these instances is a case-by-case exercise of the district court's discretion in consideration of the totality of the circumstances, and subject to a preponderance of the evidence standard. *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, ---S.Ct. ---- (2014), 2014 WL 1672251, at *5 (Apr. 29, 2014). (Rejecting the Federal Circuit's view as to whether a case is "exceptional" so as to justify an award of attorney's fees in patent litigation as overly restrictive.)

Upon consideration and even applying the more flexible standard set forth in *Octane Fitness*, the Court concludes that the case at bar is not an exceptional case warranting the imposition of attorney's fees and costs, meaning that it is not a "standout" from others with respect to the substantive strength (or lack thereof) of Monster Daddy's litigating position after considering both the governing law and facts of the case; or with respect to the unreasonableness of the manner in which this case was litigated. It follows that the Court would also not find this case to be "exceptional" under a higher "bad faith" or "something less than bad faith" standard to warrant the imposition of attorney's fees. The Court has always been cognizant of the complexity and high stakes involved in this case. Many of the issues were hotly contested and of great concern to both sides. This case has been actively litigated for several years and resulted in a substantial amount of motion practice. The Court previously denied Monster Cable's motion to dismiss and motion for summary judgment (ECF Nos. 226 and 251) and ultimately granted in part Monster Cable's motion for reconsideration of this Court's order denying Monster Cable's Motion for Summary

Judgment. (ECF No. 305.)  In that order, this Court granted summary judgment in favor of Monster Cable on Monster Daddy's breach of contract, South Carolina Unfair Trade Practices Act and ScreenClean claims but left certain issues to be resolved at trial, particularly Monster Daddy's West Coast Customs Lanham Act claims and Monster Cable's counterclaims. Although Monster Daddy ultimately lost on the claims,  it is not appropriate to look back in hindsight and conclude that Monster Daddy lacked sufficient basis for asserting and defending the claims simply because it lost at trial.  *See Vanwyk Textile Systems, B.V. v. Zimmer Machinery America, Inc.*, 994 F.Supp. 350, 382 (W.D.N.C. 1997)("A party should not be penalized for defending or prosecuting a lawsuit when the party has a good faith belief in its position.")

Of course, as Monster Cable points out, this Court has already made some rulings as to Monster Daddy's conduct which have some bearing on the instant analysis.  In an order dated April 23, 2013, this Court issued limited sanctions based on Monster Daddy's failure to produce documents responsive to Monster Cable's discovery requests and comply with the Court's directives. (ECF No. 262 at 7.)  In a subsequent order, this Court awarded Monster Cable's reasonable attorney's fees and costs associated with reconvening a Rule 30(b)(6) deposition and for the reasonable attorney's fees and costs associated with filing a discovery motion.  (ECF No. 428.) Although the Court has made a finding as to the bad faith nature of Monster Daddy's conduct relative to discovery, the Court declines to use that order and those proceedings as further proof of any bad faith or unreasonable conduct on the part of Monster Daddy as to the case in its entirety and for the purpose of awarding fees under the Lanham Act.  To the extent Monster Cable contends that an award of attorney's fees under the Lanham Act is appropriate based on the discovery-related conduct of Monster Daddy during the course of this litigation, the Court has already addressed the

-10-

behavior and made an award.   Monster Cable, as the prevailing party, has not established the exceptional nature of the case.   Accordingly, Monster Cable's motion for attorney's fees, to the extent it seeks fees pursuant to the Lanham Act, 15 U.S.C. § 1117(a), is denied.

3. Determining Reasonableness of Fee

Having concluded that Monster Cable is entitled to some fees as the prevailing party under the Settlement Agreement, the Court must determine a corresponding reasonable fee award. Monster Cable asserts that its fee request is supported by the relevant factors and is reasonable, particularly in view of the time and labor required to litigate the action, the uniqueness of the issues raised, and the skill required on the part of experienced and able attorneys in order to pursue the matter. (ECF No. 383-1 at 24.)  Although Monster Daddy contends that Monster Cable's Motion for Attorney's Fees and Costs should be denied in its entirety, it puts forth an alternative argument asking this Court to reduce any award to just the reasonable and justified fees and costs associated with the  breach of contract case. (ECF No. 409 at 31.)   In support of its argument, Monster Daddy submits the affidavit of Howard Tollin of Sterling Analytics Group, LLC, who was hired by Monster Daddy for the purposes auditing Monster Cable's fee request.  Based on the report and affidavit, Monster Daddy seeks a significant reduction in the award.  As noted above, the Court has concluded that Monster Cable is entitled to attorney's fees and costs as a prevailing party under the Settlement Agreement.  But, the Court has also concluded that a discretionary award of attorney's fees pursuant to Section 35(a) of the Lanham Act is not warranted and has denied that portion of Monster Cable's request.  Both of these conclusions must be taken into account in determining an appropriate award.  The Court must ultimately determine whether Monster Cable is entitled to  fees associated with the litigation of all of the claims, or whether the award should be reduced to reflect

only the work performed in litigating the breach of contract claims.  For the following reasons, the Court concludes that Monster Cable is only entitled to fees associated with the breach of contract claims.

To determine whether the requested amount is reasonable, the Court applies the "lodestar" formula and should multiply the number of hours reasonably expended by counsel by a reasonable hourly rate. *See Child Evangelism Fellowship of South Carolina v. Anderson School Dist. 5,* No. 8:04-1866-HMH, 2007 WL 1302692 (D.S.C. 2007).  In determining reasonableness, the Court shall analyze the twelve factors set forth in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978). Those twelve factors are "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases." *Barber*, 577 F.2d at 226.  Although the Court must consider all twelve factors, it is not required to apply them rigidly.

A.    Analysis of the Barber Factors

The Fourth Circuit has held that there is no strict manner in which the *Barber* factors are to be considered and applied.  *See E.E.O.C. v. Service News Co.*, 898 F.2d 958, 965 (4th Cir. 1990).  The Court is to review all twelve *Barber* factors and  make specific findings as to the factors it determines are relevant to its determination.

-12-

1.  Time and Labor Expended

The parties have been in litigation for several years on important issues. Counsel for Monster Cable has certainly invested significant amounts of time and effort litigating these claims. The amount of fees and costs sought by Monster Cable, which is $2,323,259.20, represents hours of work and demonstrates the significant effort made by counsel to obtain a favorable resolution in this matter. Monster Cable's fee request is supported by the affidavits of counsel and significant supporting documentation.

Monster Daddy raises objection to the amount of time expended by Monster Cable in this case. Specifically, Monster Daddy challenges the billing practices of Monster Cable's counsel which Monster Daddy suggests is both excessive and unreasonable. (ECF No. 409 at 11.) The Court believes that this factor is very important to determining an appropriate award. The work performed by counsel in this case to date has been largely complex and wide ranging. Upon review, the Court is ultimately satisfied that the time and labor expended by Monster Cable is, in large part, reasonable under the circumstances except as detailed below.

2. Novelty and Difficulty of the Questions Raised

The Court finds that counsel addressed several difficult questions of law in this case. Although a key portion of this case involves the parties' Settlement Agreement and its interpretation, Lanham Act claims (i.e., likelihood of confusion), trademarks and trademark law, and trademark registrations and procedure were heavily implicated in both Monster Daddy's claims and Monster Cable's counterclaims. Various legal theories and defenses asserted by the parties made this case far more complicated than a standard "run-of-the-mill" breach of contract case. Further, trademark claims are generally recognized as complex areas of law. *All American Title*

-13-

*Loans v. Title Cash of South Carolina, Inc*., No. 3:05-1280, 2007 WL 1464580, *5 (D.S.C. May 17, 2007) ("[T]rademark and trade name protections … is a relatively complex area of law.").  The Court concludes that this factor is an important consideration in this analysis.

3.  The Skill Required to Properly Perform the Legal Services Rendered

This case involved complex issues of intellectual property and complex business litigation. Monster Cable understandably made use of two top law firms as primary and local counsel and further utilized experienced counsel to address these complicated and significant matters.

4. The Attorney's Opportunity Costs in Pressing the Instant Litigation

"This factor typically applies in circumstances where counsel was required to forgo some measure of compensation because of the time devoted to a case." *Uhlig, LLC v. Shirley*, 895 F.Supp.2d 707, 716–17 (D.S.C. 2012) (citing *Daly v. Hill*, 790 F.2d 1071, 1082 n. 15 (4th Cir. 1986) (noting that the effect of pursuing a civil rights action may require an adjustment of the hourly attorney fee rate in order to fully compensate an attorney for his or her lost opportunities to pursue other, more lucrative work)).  The Court acknowledges that counsel for Monster Cable likely spent a great deal of time on this matter, some of which could have been directed to other case files.  However, this factor does not seem particularly significant to the overall analysis given that counsel has represented that this matter was handled on the basis of an hourly fee arrangement.

5. The Customary Fee for Like Work

The Court must attempt to compensate attorneys at the prevailing market rate in the relevant community.  *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994).  Normally, the relevant community is the judicial community in which the court sits, however, in some circumstances where it is reasonable to retain attorneys from other communities, the rates in those

communities may also be considered. *Id.* The Court may draw upon its own knowledge of litigation rates often charged in this district. *See Joe Hand Promotions, Inc. v. The Precint Bar–Daxlam, Ltd.*, No. 3:10–199–CMC, 2010 WL 3420189, *4 (D.S.C. Aug. 23, 2010) (finding requested fees to be reasonable based on court's "own knowledge of rates charged in litigation in this court" for "similar work in this geographic area."). Monster Cable provided the Court with declarations from counsel outlining fees and costs associated with the instant dispute which the Court has considered as discussed more fully below. Upon consideration, the Court believes that some of the requested rates are inordinately high.

6. The Attorney's Expectations at the Outset of the Litigation

Monster Cable has represented that this case was not taken on a contingency fee basis by any attorney representing Monster Cable. Counsel therefore expected to be compensated for their efforts— by a longstanding client— regardless of the ultimate outcome of the case. At the outset, counsel for Monster Cable fully expected to litigate this matter on the merits, but likely did not anticipate the course the litigation has ultimately taken over the course of several years. The Court acknowledges this factor but does not believe it justifies an additional enhancement or reduction in the fee request.

7. The Time Limitations Imposed by the Client or the Circumstances

This matter necessitated significant efforts in research, briefing, and motions practice among other matters. Monster Cable represents that, at certain times, the demands of this case required counsel to devote significant time and resources to prepare for hearings and ultimately for the trial of this case. The Court also recognizes that certain aspects of this case required a great deal of coordinated effort on the part of several timekeepers.

8. The Amount in Controversy and the Results Obtained

The most critical factor in calculating a reasonable fee award is the degree of success obtained; when a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. *Brodziak v. Runyan*, 145 F.3d 194, 196 -197(4th Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436  (1983)).  The case as a whole involved valuable assets to both parties.   Monster Cable obtained a favorable result in protecting its assets and defending the suit.

9. The Experience, Reputation, and Ability of the Attorneys

Both law firms representing Monster Cable have extensive experience in complex litigation and intellectual property matters. The attorneys involved are well respected for their abilities and enjoy excellent reputations.  Monster Daddy does not contest that Monster Cable's counsel posses a high level of ability and professional standing.  (ECF No. 409 at 22.)   Monster Daddy instead contends that the purported experience, reputation and ability of the attorneys involved in this case should have yielded a lower bill than the one submitted to the Court.  (ECF No. 409 at 22.)  Having been involved in this case for several years, the Court does not reach the same conclusion as a matter of course.   The complexity of the litigation justifies Monster Cable's selection of knowledgeable and competent lead counsel and equally skilled and competent local counsel to address the matter in this South Carolina court. The briefing and supporting submissions on behalf of the litigators and intellectual property attorneys involved in this case generally support the requested attorney's fees and outline counsel's overall experience.

10. The Undesirability of the Case Within the Legal Community in Which the Suit Arose

This factor takes into account that attorneys may undertake litigation that is "not pleasantly

received by the community or [the attorney's] contemporaries." *Johnson v. Ga. Hwy. Exp. Inc*., 488 F.2d 714, 719 (5th Cir. 1974). Both parties and the Court agree that this factor has no direct bearing on the reasonableness of the fees sought in this case.

     11.The Nature and Length of the Professional Relationship Between Attorney and Client

     Monster Cable is a long-term client of lead counsel LaRiviere, Grubman & Payne ("LGP") and this representation likely only confirmed the value of the firm to Monster Cable. Additionally, local law firm Nexsen Pruet has been heavily involved in litigation involving these parties for several years. These relationships likely present some value to the attorneys involved aside from the fees charged the client in this case.

     12.  Attorney's Fees Award in Similar Cases

     Finally, the Court considers  attorney's fees awards in similar cases as a relevant factor. The Court has reviewed several cases in this district including similar cases involving complicated and technical intellectual property claims and other complex issues. *See,.e.g. Super Duper, Inc. v. Mattel, Inc.*, No. 6:05–cv–1700–HFF–WMC, 2009 WL 866463 (D.S.C. Mar. 31, 2009) (finding a request for fees in the amount of $2,643,844.15 appropriate in a complex trademark and patent infringement case litigated for several years and involving experienced in-state and out-of-state counsel); *Uhlig v. Shirley*, 895 F. Supp. 2d 707 (D.S.C. Sept. 25, 2012)(finding attorney's fees sought to be excessive in comparison to similar actions involving misappropriation of trade secrets). These cases have provided additional insight on hourly rates and fees found to be reasonable by other courts in this district for similarly sophisticated legal work and under similar circumstances.

  B.     Computing the Lodestar Figure

-17-

With the *Barber* factors in mind, in determining the proper fee award, the Court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Absent circumstances warranting adjustment, the lodestar figure represents the proper fee award. *See Blum v. Stenson*, 465 U.S. 886, 888 (1984). Based on these considerations, the Court makes the following determinations:

1.    Reasonable Hourly Rate

The balance of the relevant *Barber* factors weigh in favor of reducing the actual hourly rate. This Court previously addressed attorney's fees in this matter in conjunction with a discovery sanction and found the appropriate hourly rate for the attorneys in this case to be $330 per hour. Having considered the arguments of the parties and the record, the Court applies the same hourly rate to the instant petition. This is the hourly rate of the special counsel who did significant work on the case and is consistent with the Court's knowledge of hourly rates for other high level attorneys in the community. This rate also takes into account counsel's expertise and experience in the field of intellectual property and litigation.[2] Although some of the attorneys involved have significant legal experience which may command a higher hourly rate, the Court believes the hourly rate of $330 to be appropriate for the type of legal work performed over the course of the entire litigation.

The Court also finds it appropriate to cut the requested paralegal rate from $190 to $150. A paralegal rate of $150 was recently approved in another case in this district and the Court finds

---

[2]Other courts in this district have found that slightly lower hourly rates are more appropriate for work done by senior attorneys and partners. *Atkinson v. House of Raeford Farms, Inc*., Docket Nos. 09–cv–1901, 09–cv3137, 2012 WL 2923246, at *3 (D.S.C. July 18, 2012) (awarding attorney's fees at a rate of $300/hour for law partners); *CT & T EV Sales, Inc. v. 2AM Group, LLC*, No. 7:11–1532–TMC, 2012 WL 3010911, at *4 (D.S.C. Jul. 13, 2012)(same).

-18-

this rate to be more in line with the going rates for work done by paralegals in this district. *See Uhlig, LLC v. Shirley*, 895 F. Supp. 2d 707, 717 (D.S.C. Sept. 25, 2012) (approving rate of $150 per hour for work done by paralegals at a law firm of similar size and national presence).

    2.    Hours Reasonably Expended

In addition to establishing a reasonable hourly rate, the Court is required to calculate the number of hours reasonably expended by the prevailing party seeking attorney's fees. In making this determination, "the court should not simply accept as reasonable the number of hours reported by counsel." *Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. 5*, No. 8:04-1866-HMH, 2007 WL 1302692, *2 (D.S.C. May 2, 2007)(internal citation omitted). The number of hours should not include hours that are "excessive, redundant, or otherwise unnecessary" in order to arrive at the number of hours that would properly be billed to the client. *Hensley,* 461 U.S. at 434.

Here, the Court must engage in a further analysis of the hours reasonably expended in this matter given that it has concluded that the full award requested by Monster Cable is not warranted. As noted above, the Court has determined that some award should be made in this case due to Monster Cable's status as a prevailing party under the Settlement Agreement. But the Court declined to conclude that this matter constitutes an exceptional case under the Lanham Act. Accordingly, this Court must endeavor to apportion attorney's fees in relation to hours reasonably expended on the litigation as contemplated by the Settlement Agreement. Although Monster Cable recognizes the interrelatedness of many of the claims (ECF No. 383-1 at 32), it has undertaken great effort to apportion time and costs based on the specific and central issues of the litigation which aids the Court in evaluating how much time and resources were devoted to various issues. In some instances, claims for relief will involve a "common core of facts or will be based on

related legal theories," thus, "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). In such a case, the court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* (Finding the district court did not err in refusing to apportion the fee award mechanically on the basis of success or failure on particular issues given the interrelated nature of the facts and legal theories in this case). Still, under the circumstances, the Court must make some effort to differentiate between work done on various claims.

As guidance, the Court looks to case law concerning apportionment often employed in the context of Lanham Act cases. For instance, the emerging rule is that, as a general matter, "a prevailing party in a case involving Lanham Act and non-Lanham Act claims can recover attorneys' fees only for time spent litigating the Lanham Act claims" unless the Lanham Act and non-Lanham Act claims are so intertwined that it is impossible to differentiate between work done on claims. *Gracie v. Gracie*, 217 F.3d 1060, 1069 (9th Cir. 2000); *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997) ("[U]nder 15 U.S.C. § 1117(a), attorneys' fees are recoverable only for work performed with claims filed under the Lanham Act."). Further, the "impossibility of making an exact apportionment does not relieve the district court of its duty to make some attempt to adjust the fee award in an effort to reflect an apportionment. In other words, apportionment or an attempt at apportionment is required unless the court finds the claims are so inextricably intertwined that even an estimated adjustment would be meaningless." *Gracie*, 217 F.3d at 1069–70. Thus, some apportionment or an attempt at apportionment would have been necessary to award fees incurred solely on the Lanham Act claims if this Court had granted

-20-

reasonable attorney's fees on the Lanham Act claims but had denied other requested relief.

As the Supreme Court recognized in *Hensley*, "there is no precise rule or formula to be applied in making these determinations....the district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436-437. The Court has discretion in making this equitable judgment—but "a request for attorney's fees should not result in a second major litigation." *Id.* at 437. The Fourth Circuit recognized the approach outlined in *Hensley* in *Johnson v. City of Aiken*, 278 F.3d 333 (4th Cir. 2002), particularly applicable where a plaintiff prevailed on some but not all of the claims asserted. In such a situation, the district court should first identify the number of hours reasonably expended on the litigation and multiply that number by a reasonable rate. Then the court should subtract fees for hours spent on unsuccessful claims unrelated to the successful ones. After the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the prevailing party. *See Johnson*, 278 F.3d at 337. The instant request raises some apportionment issues because ultimately, the Court will need to subtract some incurred fees associated with the Lanham Act and related claims.

Monster Cable seeks $2,323,259.20 in attorney's fees and costs. Of this total, Monster Cable contends that $435,959.30 in attorney's fees and costs were expended on defending against Monster Daddy's breach of contract claims. Monster Daddy argues that Monster Cable's petition for attorney's fees and costs should be denied in its entirety, and in the alternative, requests that fees and costs should only be awarded for breach of contact fees, significantly reduced to take into account Monster Daddy's allegations of unreasonable and unjustifiable billing. (ECF No. 409 at

31.)  Monster Daddy submits the audit report of Mr. Tollin in an effort to demonstrate "the excessive and unreasonable billing incurred by Defendants' counsel both here in South Carolina and in California." (ECF No. 409 at 11-12.)  In reviewing a previous fee petition in this case, this Court applied an overall twenty-percent reduction in the fees to be awarded to account for unnecessary duplication of efforts, and overstaffing associated with the matter.[3]  *See generally Sun Pub. Co. v. Mecklenburg News, Inc.*, 823 F.2d 818 (4th Cir. 1987).  In deciding to apply an across-the-board cut, the Court specifically reviewed the detailed invoices and summary charts from the law firms of Nexsen Pruet and LGP which were submitted to the Court in-camera to aid in the determination of the reasonable amount of attorney's fees and costs associated with that petition.  The Court was then able to conduct a close review of the hourly time entries.

Here, the Court has received in-camera, unredacted copies of invoices and summary charts reflecting Monster Cable's fees and expenses to aid the Court in making a further assessment of the appropriateness of the time billed in this matter.  Also helpful to the Court has been Monster Cable's efforts to prorate the entries based on the  hours billed on various aspects of this case—Monster Daddy's breach of contract, Lanham Act Screen Clean claims, Lanham Act West Coast Customs claims, and declaratory judgment.  This breakdown of attorney time among the various

---

[3]"When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board-cut." *Bivins v. Wrap It Up, Inc*., 548 F.3d 1348, 1350 (11th Cir. 2008) (per curiam); *see also Uhlig, LLC v. Shirley*, 895 F. Supp. 2d 707, 717 (D.S.C. Sept. 25, 2012) (applying a sixty-percent reduction in attorney and paralegal time to arrive at a reasonable award); *Alexander S. By and Through Bowers v. Boyd*, 929 F.Supp. 925, 943 (D.S.C.  Nov. 22, 1995)(applying a ten-percent reduction in the overall fee submission in addition to other deductions); *South Carolinians for Responsible Government v. Krawcheck*,  No. 3:06–1640–MBS, 2012 WL 2830274 (D.S.C. July 9, 2012) (applying a thirty-five-percent reduction for partial success and further reducing the award by an additional five-percent to eliminate unnecessary duplication of effort).

claims and defenses helps the Court to better adjudicate the fee petition to award attorney's fees and costs on the breach of contract claims only. Monster Cable represents that it has not requested the total amount billed to Monster Cable during the relevant time period and has further subtracted fees and costs related to the discovery sanctions issues. Further, Monster Cable maintains that it took into account any discounts or deductions provided to Monster Cable. (ECF No. 383-2 at 5.) Having reviewed the entries, the Court deems a twenty- percent overall reduction also necessary here. The Court declines to make any further reductions requested by Monster Daddy—this indeed was a significant and time consuming case that clearly took a great deal of effort and work on the part of Monster Cable's counsel. The Court is convinced that, in significant part, Monster Cable's counsel did a fine job under the circumstances to coordinate their efforts between counsel and to ultimately to put forth a superior case for the benefit of the client.

The Court has also carefully considered what was anticipated by the Settlement Agreement which entitles the prevailing party to recover attorney's fees and costs in the event of a breach of the Settlement Agreement. This Court concluded that Monster Daddy breached the Settlement Agreement and thus, based on the above findings and considerations, the Court is prepared to make an award to Monster Cable to consist of the fees and costs outlined in its filings and specifically designated as matters concerning a breach of the Settlement Agreement. The Court however, believes that the award should be based on a rate of $330.00 for attorneys and $150.00 for paralegals. The Court is of the opinion that these selected rates will take into account the expected fluctuations in billing rates that occurred over the course of this litigation and will also offer an "average" or "median" rate considering the wide-range of billing rates among attorneys who staffed this case over the years. To that end and to further aid the Court in finalizing its ruling, Monster

Cable's counsel is asked to re-calculate and re-submit summary charts outlining the fees and costs associated with litigating the breach of contract claims but should calculate the hours expended based on the rates of $330.00 and $150.00 and should also specify the number of attorney and paralegal hours for which it seeks fees. The Court is hopeful that this request will not be overly burdensome to counsel and has asked counsel to undertake these efforts on the belief that counsel will have use of a database or spreadsheet software program that would enable them to sort, compile, and re-calculate the information more efficiently than the Court. Thus, the resubmitted summary charts should be filtered for the time entries and expenses related to the defense and prosecution of the breach of contract claims asserted in this action, and any hours expended should be calculated at the Court's rates. The Court also requests that Monster Cable make any exclusions of time entries it has agreed should be excluded from a final award. (ECF No. 421.) The Court would ask that the supplemental information be submitted within fourteen days of the date of this order. Upon receipt and review of the revised fee statement, this Court will briefly address the need for any further deductions, if any are warranted, and will enter a final order on the motion.

Finally, Monster Cable has submitted a bill of costs (ECF No. 384) in this matter. In Monster Daddy's response in opposition to Monster Cable's motion for attorneys fees and costs, Monster Daddy made a general reference to the bill of costs, but made no specific response or objection to the requested entries to the extent the request is considered independently from Monster Cable's Motion for Attorney's Fees. As far as this Court has seen, Monster Daddy has not specifically considered or addressed Monster Cable's entitlement to the requested statutory costs.

Prevailing parties are generally entitled to an award of costs pursuant to Federal Rule of Civil Procedure 54(d)(1), which provides: "[u]nless a federal statute, these rules, or a court order

provides otherwise, costs . . . should be allowed to the prevailing party." Pursuant to 28 U.S.C. § 1920, a court may tax a wide range of court and docket fees, as well as printing and copying costs.

Rule 54 makes clear that, in the ordinary course, a prevailing party is entitled to an award of costs and there exists a presumption to that effect. *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999). "To overcome the presumption, a district court 'must justify its decision [to deny costs] by 'articulating some good reason for doing so.'" *Id.* (citing *Teague v. Bakker*, 35 F.3d 978, 996 (4th Cir. 1994)). Accordingly, it is incumbent upon the unsuccessful party to show circumstances sufficient to overcome the presumption favoring an award of costs to the prevailing party. *Id.* (citing *Teague*, 35 F.3d at 996). Ultimately, the Court has discretion to award or deny costs to the prevailing party but what constitutes an allowable or recoverable "cost" in federal court cases is defined and limited by statute. *Cherry*, 186 F.3d at 446; *see* Fed.R.Civ.P. 54(d); 28 U.S.C. § 1920. Monster Daddy shall have fourteen days from the date of this Order to respond to Monster Cable's Bill of Costs. The Court will then make a ruling or request further evidence or briefing if is warranted.

## CONCLUSION

For the reasons set forth above, this Court will award Monster Cable's reasonable attorney's fees and costs, in part, as a prevailing party under the operative settlement agreement and limited to costs and fees incurred as a result of litigating the breach of contract claims. Monster Daddy has not seriously contested Monster Cable's entitlement to these specific fees and costs but instead challenges the amount requested by Monster Cable.

The Court is aware that the parties have so far been unable to reach an agreement on the amount of a fee award, but orders the parties to confer and make a good-faith attempt to resolve the

issue of the amount of attorney's fees and costs.  As the Supreme Court has noted, "[i]deally, of course, litigants will settle the amount of a fee." *Hensley*, 461 U.S. at 437.  With the knowledge that this Court will award fees to Monster Cable, and with the additional guidance offered above, the Court believes the parties should be able to settle this issue.  The Court strongly encourages the parties to make the effort to do so.

If the parties are unable to make progress on resolving the instant fee dispute, the Court directs the parties to make the additional and revised submissions requested by the Court within fourteen days of this order so that this Court may resolve any remaining issues promptly.

**IT IS SO ORDERED.**

/s/Mary G. Lewis
United States District Judge

June 19, 2014
Spartanburg, South Carolina